RAILROAD *v.* CRIDER. SAME *v.* BARBOUR. SAME
*v.* TURNER. SAME *v.* CLAYBROOK.

(*Jackson.* May 10, 1892.)

1. RAILROADS. *Statute making unfenced absolutely liable for injuries to live-stock by moving trains constitutional.*

Acts 1891, Ch. 101, fixing upon unfenced railroads absolute liability for injuries done to live-stock by their moving trains, is constitutional and valid, both as a whole and in its details, when its scope and purpose are ascertained by a correct construction. This Act should not be treated as a mere scheme for the speedy collection of damages for injuries to live-stock, although that is incidentally provided for. Its chief purpose is to prevent accidents on railroads, and, viewed from this higher ground, it is a proper and legitimate exercise of the police power of the State. (*Post, p. 492 et seq.*)

Act construed: Acts 1891, Ch. 101.

Cases cited and approved: 26 Mo., 441; 65 Me., 333; 27 Vt., 140; 115 U. S., 522; 20 Wis., 267; 109 Ill., 402; 66 Pa. St., 164; 71 Mo., 434; 50 Iowa, 338.

2. SAME. *Same. Title of Act valid.*

And the title of said Act, though containing unnecessary details and particulars, is single, and embraces but one subject. That title is as follows: "An Act to require the section-masters of railroads to give notice of the killing or injury of live-stock by the trains or locomotives of railroads in Tennessee; to provide for the appointment of appraisers to ascertain and fix the value of such stock, or the amount of injury thereto, and to provide for 'the collection of such appraisements; *to make railroad companies liable for all damages by reason of the killing or injury of live-stock upon or near their unfenced tracks by their moving trains, cars, or engines.*" The subject of this Act is fully expressed in the last clause in italics. The preceding clauses of the title were unnecessary, but embracing only particulars germane to,

Railroads *v.* Crider *et al.*

and included in, the general subject expressed in the last clause, they do not vitiate the title or the Act. (*Post, pp. 493, 494.*)

Constitution construed: Art. II., Sec. 17.

Act construed: Acts 1891, Ch. 101.

Cases cited and approved: Luehrman *v.* Taxing District, 2 Lea, 425; Griffin, *ex parte*, 88 Tenn., 547.


3. SAME. *Same. Not vicious class legislation.*

And said Act is not unconstitutional as vicious "class legislation," although its provisions confer benefits upon a limited class, to wit, owners of live-stock, and impose burdens upon a limited class, to wit, unfenced railroads. These classes are natural and not arbitrary. (*Post, pp. 494–497.*)

(See The Morris Claimants *v.* The Stratton Claimants, 89 Tenn., 500.)


4. SAME. *Same. Provision for appraisement of damages by freeholders valid·*

And that provision of said Act is valid which authorizes the appraisement of the damages done to live-stock by three freeholders appointed by a Justice of the Peace at the instance of the owner, and makes their report *prima facie* evidence of the *value* of the stock injured or killed. This is a mere regulation as to evidence, which it was competent for the Legislature to make. (*Post, pp. 497–499.*)

Constitution construed: Art. I., Sec. 8; Art. XI., Sec. 8.


5. SAME. *Same. Provision making railroad liable for plaintiff's attorney fee, valid.*

And that provision of said Act is valid which makes railroads wrongfully refusing to pay such appraisement liable for plaintiff's attorney fee, in addition to other damages, in any suit brought to recover the damages withheld. This is not obnoxious class legislation. It is an exercise of the police power of the State. But no fee is recoverable unless the appraisement is sustained. (*Post, pp. 499–505.*)

Cases cited and approved: 115 U. S., 523; 109 Ill., 537; 16 Kansas, 573; 20 Kansas, 660; 13 Am. and Eng. R. R. Cas., 650.

Cases cited and distinguished: 31 Am. and Eng. R. R. Cas., 555; 35 *Id.*, 162.


6. SAME. *Same. Same. Fee must be fixed by jury.*

But the amount of such attorney fee must, like other damages, be fixed by the jury or the Court sitting as a jury. The provision of said Act

requiring the fee to "be fixed by the Court trying the case" is construed as providing for jury trial of this question, thereby saving the Act from unconstitutionality. (*Post, pp. 505, 506.*)

7. CONSTITUTIONAL LAW. *Doubtful construction of statute to be resolved in favor of its constitutionality.*

Doctrine re-affirmed and illustrated that where a statute is of doubtful meaning, it should receive that construction which is in harmony with the Constitution. (*Post, p. 506.*)

Cases cited and approved: Hume *v.* Railroad, 1 Cold., 74; Cole Manufacturing Company *v.* Falls, 90 Tenn., 466.

8. SAME. *Repeal of statute by implication.*

Doctrine re-affirmed and illustrated that the constitutional provision requiring laws repealing or amending former laws to recite in the caption or otherwise the law repealed or amended, does not apply to repeals or amendments which result from necessary implication. (*Post, pp. 506, 507.*)

Constitution construed: Art. II., Sec. 17.

Cases cited and approved: Insurance Company *v.* Taxing District, 4 Lea, 644; Ballentine *v.* Mayor, etc., 15 Lea, 633.

### CRIDER CASE.

Appeal in error from Circuit Court of Weakley County. W. H. SWIGGART, J.

FRANCIS FENTRESS and JOSEPH E. JONES for Railroad.

CHARLES M. EWING for Crider.

### BARBOUR CASE.

Appeal in error from Circuit Court of Lauderdale County. T. J. FLIPPIN, J.

Railroads *v.* Crider *et al.*

HOLMES CUMMINS and THOMAS STEELE for Railroad.

W. E. LYNN for Barbour.

### TURNER CASE.

Appeal in error from Circuit Court of Tipton County. T. J. FLIPPIN, J.

HOLMES CUMMINS, SANFORD & YOUNG, and JOHN G. MILLER for Railroad.

BAPTIST & BOALES for Turner.

### CLAYBROOK CASE.

Appeal in error from Circuit Court of Lauderdale County. T. J. FLIPPIN, J.

HOLMES CUMMINS and THOMAS STEELE for Railroad.

JOHN P. GAUSE for Claybrook.

LURTON, J. These four cases have been heard together. They present but one question—the constitutionality of the Act of 1891, Ch. 101, making unfenced railroads liable for all damages to owners of live-stock killed or injured by moving trains of cars or engines.

The first objection which has been urged is that the act embraces more than one subject.

The title is as follows:

"An Act to require the section-masters of railroads to give notice of the killing or injury of live-stock by the trains or locomotives of railroads in Tennessee; to provide for the appointment of appraisers to ascertain and fix the value of such stock, or the amount of injury thereto, and to provide for the collection of such appraisements; *to make railroad companies liable for all damages by reason of the killing or injury of live-stock upon or near their unfenced tracks by their moving trains, cars, or engines.*"

The subject of this act is the liability of unfenced railroads for all damages resulting to live-stock killed or injured by moving engines or cars. This subject is clearly indicated by the last clause in the title, which we have indicated by italics. The preceding clauses of the title were unnecessary. They are but statements as to the subdivisions of the act, and point out the *measure* of the damages, and the *manner* in which these damages are to be *ascertained* and *enforced*.

When the object of an act is to subject railroad companies operating unfenced tracks to absolute liability for all damages resulting from their unfenced condition, we can see no reasonable objection to embodying in the same act the means by which this liability may be ascertained and enforced, as well as provision for the increase of such dam-

ages under conditions named in the Act. If the means are in themselves valid, their inclusion in the Act will not subject it to the inhibitions of the Constitution concerning bills containing more than one subject. So, if these subdivisions relating to details be germane, and related to the subject of the Act, their inclusion in the title, while unnecessary, will not operate to make it an Act having more than one subject. The well-settled rule is, that this provision of the Constitution should be construed liberally, otherwise it would operate to embarrass legislation without advancing the beneficial purpose intended, which was to prevent combinations of incongruous subjects in one bill, with the object of drawing to the support of the whole bill members who might wish to support but a part. Only the general object of an act need be stated in the title, but under such title all the details by which that object is to be attained may be included. *Luehrman* v. *Taxing District,* 2 Lea, 425; *Ex parte Griffin,* 88 Tenn., 547.

*Second.*—It is next objected that the Act is void as being class legislation, and obnoxious to Art. XI., Sec. 8, of the Constitution, which prohibits the passage of "any law for the benefit of individuals inconsistent with the general laws of the land," etc.; and as prohibited by Sec. 8 of Art. I. as not being "due process of law," or "the law of the land."

Under this head it is urged: (1) That it is applicable only to a limited class of persons—un-

fenced railroads; (2) that it operates in favor of owners of live-stock only; (3) that it provides for an *ex parte* appraisement of values by a tribunal unknown to the law, which is to sit in secret and judge without a hearing; (4) that it makes the offending corporation liable for the fee of adversary counsel if it shall unsuccessfully contest its liability for the appraised value.

Many of these objections are predicated upon the assumption that the statute is a mere piece of machinery for the more speedy collection of live-stock claims against railroads. If this view of the Act be the true one, then it does present many very serious questions of constitutional law.

In our judgment the Act has a wider purpose and rests upon much higher and broader considerations.

The end sought by this legislation is the prevention of accidents on railways, by compelling the inclosure of the track in such manner as will prevent live-stock from going on the roads. Failure to fence is made conclusive evidence of negligence whenever live-stock is killed or injured upon such an unfenced road by moving engines or cars. The liability of the company for actual damages is made the consequence of the failure to fence; and if the offending company refuse to pay the *prima facie* value of such stock, as ascertained in the mode prescribed by the Act, then it is made liable for an increase in the damages to the extent of reasonable attorney's fees in the event it

shall unsuccessfully litigate its liability for such *prima facie* value.

The duty of fencing, and the resulting liability for failure to perform such duty, is imposed, not so much in the interest of the owners of animals which may go upon an unfenced road, as in the interest of the general public, who are concerned that accidents shall be avoided, and public travel be made as safe as the exigences of that manner of transportation will permit.

The authority for requiring railroads to fence in their tracks is found in the general police power of the State. The duty may be imposed by an affirmative statute, and enforced by fines, forfeitures, and penalties; or it may be indirectly imposed, as in the Act under consideration, by subjecting unfenced roads to liabilities and penalties from which roads recognizing the duty are exonerated. The enormous power and great momentum of railway engines render such protection a reasonable requirement against the unnecessary destruction of private property and accidents to persons traveling by such conveyance.

"This police power of the State," says an eminent Judge, "extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State. According to the maxim, *sic utere tuo ut alienum non laedas*, which being of universal application, it must, of course, be within the range of legislative action to define the mode and man-

ner in which every one may so use his own as not to injure others. By this general police power of the State, persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the State; of the perfect right in the Legislature to do which, no question ever was, or, upon acknowledged. general principles, ever can be, made, so far as natural persons are concerned." Redfield, Ch. J., in 27 Vt., 140.

The constitutionality of such statutes has often been questioned, but they have been, it is believed, uniformly sustained as a valid exercise of the police power. *Gorman* v. *Pacific R. R. Co.*, 26 Mo., 441; *Wilder* v. *Maine, etc., R. R. Co.*, 65 Me., 333; *Tharpe* v. *Rutland R. R. Co.*, 27 Vt., 140; *Missouri Pacific R. R. Co.* v. *Humes*, 115 U. S., 522; *Blair* v. *Milwaukee, etc., R. R. Co.*, 20 Wis., 267; *Chicago, etc., R. R. Co.* v. *Dremser*, 109 Ill., 402; *Pa. R. R. Co.* v. *Reblet*, 66 Pa. St., 164; *Spealmon* v. *Mo. Pacific R. R. Co.*, 71 Mo., 434; *Small* v. *Chicago, Rock Island R. R. Co.*, 50 Iowa, 338; Am. and Eng. Ency. of L., Vol. 7, p. 910, and cases cited; and many other cases.

The objection that the Act creates a new judicial tribunal for the appraisement of values of stock killed upon an unfenced road is not well founded. If the valuation fixed by the board of appraisers was made conclusive evidence against the company, the act would be subject to severe criticism. But by the express terms of the statute this appraise-

32—7 P

ment is only made "*prima facie* evidence of the value of said stock, or damage as to that crippled." If the company admit its liability and pay this value, that is the end of the matter. If it chooses to contest either the valuation or its liability, it may do so, and every opportunity is afforded it to present its defenses. In such contest this appraisement is only *prima facie* evidence of the single fact of value. It is not made evidence as to the ownership of the stock, nor that the stock was killed by the moving engines or cars of the defendant, nor that the track of the defendant road was unfenced. As *prima facie* evidence of value, it will stand in lieu of proof until some evidence contradicting it is submitted. When this is done, the question of value, like all other questions of fact necessary to make out the plaintiff's case, must be determined upon the preponderance of proof.

The fact that three sworn and disinterested appraisers, after examination of the animals, have agreed upon and certified to a certain valuation, is made by the statute *prima facie* evidence of the value. There can be no serious doubt as to the power of the Legislature to make such an appraisement, although without notice, *prima facie* evidence of the truth of the appraisement. Concerning the power of the Legislature, an eminent authority says:

"As to what shall be evidence, and which party shall assume the burden of proof in civil cases, its authority is practically unrestricted, so long as its

regulations are impartial and uniform; but it has no power to establish rules which, under pretense of regulating the presentation of evidence, go as far as altogether to preclude a party from exhibiting his rights." Cooley on Const. Lim., side-page 368.

With the limitations stated, such statutes as the one in question have been uniformly upheld. Code, § 1301, which provides that the burden of proof shall be upon the railroad company, when sued for killing stock, to show that the accident was unavoidable, is a striking instance of an Act shifting the burden of proof to the extent of requiring the defendant to prove a negative. So, by another statute, the *ex parte* certificate of a Notary Public that he had made a demand and given notice of the dishonor of negotiable paper, is made *prima facie* evidence of the fact of such notice. So, statutes which make tax-deeds *prima facie* evidence that all the proceedings have been regular, have been upheld, although such deed would not otherwise have any such force or effect, and the party claiming under one would, at common law, have to establish the regularity of the successive steps leading to the deed. Statutes making defective records evidence of valid conveyances are of a similar nature.

*Third.*—Does the imposition of an attorney's fee, in case the railroad company unsuccessfully litigates, violate any constitutional right?

In our view, plaintiff can only recover such fee

in case there is a recovery of the appraised valuation. If he fails to sustain the appraisement, the defense has been, in part, just, and the defendant is not to be onerated with any fee. But it is said that the effect of this provision is to compel the company to pay the appraised value or submit to the imposition of a penalty in case it elects to exhibit its defenses in the Courts of the country and shall be unsuccessful. It is urged that this is the imposition of a burden upon one class of litigants in favor of another, and violates the constitutional rule which requires equality of right, privilege, and exemption. These objections overlook the fact that this legislation is intended to compel railroad companies to fence in their tracks; and that the liability imposed is a consequence of the failure of the offending company to adopt so necessary a means toward the protection of the property of others, and as a precaution against accidents resulting from the presence of animals on the road, thus endangering the safety of those controlling and those using so dangerous a mode of conveyance. If the State may, in the exercise of its police powers, compel all railroad companies to fence in their tracks, it may enforce such policy by making the offending company liable to all who sustain injury by neglecting such precaution. To this effect is the line of decisions we have already cited. To attain this end, it is not obliged to stop at mere compensation, for it may blend public and private in-

terests by permitting a recovery in excess of act-
ual damages.

This principle finds illustration in the common
law, which permits, in cases where the wrong is
so gross as to demand punishment, a recovery of
a sum in excess of mere compensation, as exemplary
or punitive damages. In many cases where such
damages are admissible, the interests of society and
of the person injured are united, and this additional
damage inflicted is permitted to be taken by the
individual injured, although it is imposed as a
punishment in the interest of the public.

If at common law the damages inflicted upon a
wrong-doer may be in excess of mere compensa-
tion, whenever the interests of society are affected
or are to be subserved, it must be obvious that
the law-making power may prescribe the measure
of such additional damage and determine its dis-
position.

Upon this ground, statutes imposing double dam-
ages against unfenced railroads have been sustained
as within the police power of the State. In the
case of *Railroad* v. *Humes* the constitutionality of
a statute of Missouri imposing double damages
upon unfenced railroads for live-stock killed or
injured, was involved. The statute had been sus-
tained by the Court of Missouri. Upon writ of
error to the United States Supreme Court, a similar
conclusion was reached. The provisions of the
Constitution of the United States in regard to
"due process of law," etc., being substantially

identical with that in the Constitutions of both
Missouri and Tennessee.

"The power of the State," said that Court, "to
impose fines and penalties for a violation of its
statutory requirements is coëval with government,
and the mode in which they shall be enforced,
whether at the suit of a private person or at the
suit of the public, and what disposition shall be
made of the amount collected, are merely matters
of legislative discretion. The statutes of nearly
every State in the Union provide for the increase
of damages where the injury complained of results
from the neglect of duties imposed for the better
security of life and property, and make that in-
crease in many cases double, in some cases treble,
and even quadruple the actual damages. And ex-
perience favors this legislation as the most efficient
mode of preventing, with the least inconvenience,
the commission of injuries. The injury actually
received is often so small that in many cases no
effort would be made by the sufferers to obtain
redress, if the interest were not supported by the
imposition of punitive damages." 115 U. S., 523.

The State has not, by this Act, imposed double
or triple damages, as it might have done, but it
has subjected the offending company to actual dam-
ages, and to an increase of this damage to the
extent of the reasonable attorney's fees incurred by
the successful plaintiff in the establishment of his
claim. This additional penalty is not imposed ex-
cept upon the contingency that the company shall

refuse settlement upon the basis of the *prima facie* valuation, and upon the further condition that the owner of the live-stock killed or injured shall establish both the liability of the company and that the appraised value was not excessive. What the State may impose as a penalty without condition, it may impose subject to condition. The measure of the damages for failure to fence, as well as the disposition of any recovery in excess of actual compensation was wholly within the legislative discretion. The addition or increase of damages, in case the company unsuccessfully contests its liability for the full amount of the appraisement, is to be measured by the reasonable expense thrown upon the plaintiff in what is thereby established to have been an unnecessary litigation.

The view we have taken of this Act, its objects and scope, excludes the assumption that the statute is one merely imposing a burden upon one class of litigants not borne by all others. The subject of the legislation being within the police power of the State, it is not objectionable that additional or increased damages are imposed upon such terms and subject to such contingencies as the public interest shall demand.

Our Code furnishes many illustrations of the imposition of penalties and forfeitures under the police power of the State. In some cases such penalties are turned over to the relator, though he have no special interest. In others, the recovery is divided between the State and the party

suing; and in still others, the State retains the whole.

We have been cited to two cases which are supposed to support the contention of the learned counsel that the imposition of the reasonable fee of an attorney is invalid, as partial legislation. *Railroad* v. *Williams*, 31 Am. and Eng. R. R. Cases, 555; *Wilder* v. *Railroad*, 35 Am. and Eng. R. R. Cases, 162. The first is an Arkansas case, and arose under a statute of that State entitled, "An Act to provide for the settlement of claims for stock killed or injured by railroads." The statute provided for an arbitration, and imposed the fees of adversary counsel in case the award was not paid. The case is to be distinguished from this in many particulars. The Act was not one intended to compel the fencing of railroads, and was purely an effort to compel submission to an award. The other arose under an Act in its general scope very much like our own. The Court treated it alone from the stand-point that it was the imposition of a burden upon one class of litigants not imposed upon all others. The view we have taken, that such added liability was but the imposition of additional damages, and was a valid exercise of the police power, was never considered. Acts similar to our own in respect to this feature have been sustained by reasoning more satisfactory to us. *Railroad* v. *Duggan*, 109 Ill., 537 (S. C., 20 Am. and Eng. R. R. Cases, 489); *Railroad* v. *Mower*, 16 Kansas, 573; *Railroad* v. *Shirley*, 20 Kansas,

660; *Railroad* v. *Olney*, 13 Am. and Eng. R. R. Cases, 650.

*Fourth.*—In the case of *Railroad* v. *Crider*, the learned Circuit Judge construed this Act as requiring the Judge trying the case to adjudge what should be reasonable attorney's fees, and to add such fee to the amount of plaintiff's recovery as determined by the jury. In the other cases heard along with the Crider case, but coming from a different circuit, the question of the amount of the fee was submitted to the jury. The contention now made is, that the Act requires the amount of such additional damage to be fixed by the Judge, and that the defendant is therefore denied the right of jury trial. The language of the Act concerning this matter is that this fee shall "be fixed by the Court trying the case." The meaning of "Court" depends upon the connection in which it is used. It may refer to the place where justice is judicially administered. The term, as defined by Mr. Bouvier in his dictionary, is this: "The presence of a sufficient number of the members of a body in the government, to which the public administration of justice is delegated, regularly convened in an authorized place, at an appointed time, engaged in the full and regular performance of its duties."

To determine whether the term is used as signifying the Judge alone, or the tribunal, which may consist of Judge and jury, resort must be had—if the term be used with reference to the

form of trial—to the nature of the questions sub-
mitted and to the mode generally in use in the
tribunal for the trial of similar questions. Clearly,
if the case is one in which a jury trial is per-
missible, and the other matters involved have, in
fact, been submitted to a jury, then this matter
of the amount of such fee is to be submitted,
likewise to the jury. The "Court trying the
cause," in that event, would be the Judge and
jury. To construe this clause otherwise would be
to suppose that the Legislature intended, in a jury
case, to withdraw one question of fact and submit
it to the Judge alone. When an Act is of
doubtful meaning, that construction should be given
to it which shall be found in harmony with the
Constitution. *Horne* v. *Railroad*, 1 Cold., 74; *Cole
Mfg. Co.* v. *Falls*, 90 Tenn., 466.

*Fifth.*—It has been urged that this statute is
invalid because it amends in part, and repeals in
part, Code (M. & V.), §§ 1298, 1299, and 1300, with-
out reciting or otherwise mentioning the amended
or repealed laws, and that this is prohibited by
Art. II., Sec. 17, of the Constitution.

The sections of the Code referred to are those
requiring all railroad companies to observe certain
precautions against accidents, and making them re-
sponsible for all damages resulting from failure, and
exonerating them from liability for damage to per-
sons or property when in the observance of the
statute.

The effect of this legislation upon unfenced

railroads, and as to the animals mentioned in the Act, greatly modifies the former law. But this is brought about by the conflict between an affirmative statute laying down definitely a new rule, and the old law. The effect may necessarily be the repeal, modification, or amendment of the law as it formerly stood.

The constitutional provision requiring laws repealing or amending former laws to recite in the caption or otherwise the law repealed or amended, does not apply to repeals or amendments which result from necessary implication. *Home Insurance Co.* v. *Taxing District*, 4 Lea, 644; *Ballentine* v. *Mayor*, 15 Lea, 633.

The judgment in the Crider case must be modified by excluding the attorney's fee added to the verdict by action of the Circuit Judge.

The judgments in the other cases will be affirmed.