Railroad *v.* Hughes.

---

RAILROAD *v.* HUGHES.

(*Nashville.*     February 23, 1895.)

1. RAILROADS.     *Fencing track.*

A statute making railroad companies that fail to fence their track liable for live stock killed by their trains does not operate to require the fencing of their depots and stations, or the grounds immediately surrounding same, or the crossings of public highways, or portions of their tracks that traverse towns or cities and are intersected by public streets. (*Post, pp. 451–454.*)

Cases cited: Railroad *v.* Lull, 28 Mich., 510; Soward *v.* Railroad, 30 Iowa, 551.

2. SAME.     *Liability for failure to fence track.*

The statutory liability of railroads for failure to fence track does not, in the absence of other negligence, attach when live stock enter upon the track where it is not required to be fenced and pursues it until struck by a train, although the track may not have been inclosed at the place of the accident. (*Post, pp. 451–453.*)

3. SAME.     *Same.*

But the liability does attach in such case, if it appears that, in violation of the statute, the railroad company failed to provide suitable stock guards, which would have prevented stock from pursuing the track and colliding with train.     (*Post, pp. 453, 454.*)

4. SAME.     *Same.*

The mere fact that the track of a railroad is situated within the limits of an incorporated town does not, without more, excuse the company from the statutory duty to fence its track.     (*Post, pp. 454–458.*)

---

FROM WARREN.

---

Appeal in error from Circuit Court of Warren County.     M. D. SMALLMAN, J.

F. M. SMITH and W. T. MURRAY for Hughes.

T. C. LIND, EAST & FOGG, J. D. B. DeBow for Railroad.

McALISTER, J. This is an action on the case commenced in the Circuit Court of Warren County by J. N. Hughes against the railroad company, to recover damages for the killing of plaintiff's mare. There was a verdict and judgment in favor of the plaintiff for one hundred and fifty dollars. The company appealed and has assigned errors.

The third assignment of error is that the Circuit Judge charged the jury, *inter alia*, that "it is incumbent upon the defendant to show that its road is fenced with a good and lawful fence and sufficient cattle guards." It is insisted on behalf of plaintiff in error, that the Act of 1891, Ch. 101, fixing liability of railroads for stock killed on unfenced tracks, has no application to the facts of this case, and that the charge was therefore erroneous. It appears from the record that on January 5, 1893, the plaintiff, on reaching Tullahoma, about four or five o'clock in the evening, unhitched his two horses, and tied them by the bridle to his wagon, where he left them standing. After remaining there for some time, the horses became frightened and ran away, running side by side, and going towards the railroad depot, within the corporate limits. On reaching the depot, they turned down the railroad track, and ran south between the rails for a distance of

one half or three quarters of a mile, when, it is claimed, the mare was struck by a freight train moving north, and sustained injuries which caused her death. The railroad track was not fenced either at the depot crossing, where the mare first went upon the track, or at the point where it is claimed she was struck by the train. The witness, J. M. Muse, introduced by plaintiff, testified that he "tracked two horses from the railroad depot in Tullahoma, going south, for about one half mile, and the two tracks were between the rails nearly all the way; sometimes one track was on the outside of the rail." The insistence of defendant's counsel upon this state of facts is that if an animal gets upon the track at a highway crossing, in the depot grounds, or other place where the track is not required to be fenced, the mere fact that the fence at the place of injury was defective or torn down, or was never erected, would not render the railroad liable.

It is true, as assumed by counsel, that statutes creating a liability against a railroad company for a failure to fence its track do not apply to highway crossings nor to depot and station grounds. *Flint, etc., Railroad Co.* v. *Lull*, 28 Mich., 510; *Soward* v. *Chicago & N. W. Railroad Co.*, 30 Iowa, 551. Says Mr. Thornton in his work on Railroad Fences, Sec. 91, viz.: "It has always been regarded that the fencing of a station or depot, and the grounds immediately around it, would not only be such a

great inconvenience to the company as to excuse it from fencing, but would so greatly inconvenience the public in passing to and from the station or depot, as to furnish an additional and sufficient pretext for not fencing. The rule is therefore firmly established, even though the statute makes no exception as to it, that a company is not required to fence its station nor its depot, or ground immediately surrounding either, which are necessary for the public to use in dealing with the company. Nor is it bound to fence the approaches to its station grounds," citing numerous authorities.

Wood on Railroads, Vol. III., Sec. 419, says: "Depot grounds, as a rule, cannot be fenced, at least without great inconvenience to the company as well as to the public, and, generally, are not required to be, and, where cattle, straying upon the highway, escape upon the track over such grounds, or at any point where the company is not required to erect a fence, the company is not responsible."

It is the condition of the road at the place where the animal entered upon the track, and not its condition at the *locus in quo* of the accident, that is material in determining whether the railroad has complied with its statutory duty to fence its track. 109 Ind., 295; *Id.*, 235; 38 Ill., 280; Shearman & Redfield on Negligence, Sec. 436.

So, then, in this case, if nothing else appeared, the company would not be liable for the omission to fence at the place where the accident occurred,

since the mare entered upon the track at a point
where the company was not bound to fence. But it
will be observed the statute not only imposes upon the
company the duty to fence, but likewise the duty
to construct sufficient cattle guards; and, while the
company is not liable for having failed to fence its
depot grounds where the mare entered upon the
track, yet it is obvious that, if sufficient cattle
guards had been provided, as required by the statute,
the animal could not have passed up this track for
a distance of three quarters of a mile. So that
this contention must fail.

It is insisted, however, that this accident is shown
to have occurred within the limits of an incorpo-
rated town, and that the statute, therefore, has no
application. This question arose in the case of *Ells*
v. *Pacific Railroad*, 48 Mo., 232. The Court said:
"In regard to the first defense, it appeared that
the portion of the town where the accident hap-
pened had not been laid out into lots, streets, and
alleys, and that no road or street had been estab-
lished to cross the railroad near that point. This
action is prosecuted under the fifth section of the
Act concerning damages, etc. (Wagn. Stat., 520),
and the question is raised for the first time in this
Court whether a railroad company is excused from
fencing the track of its road when it runs through
a town or city, merely from that fact, and without
reference to whether it thereby crosses the public
highways of such city or town. The statute makes

no exception in regard to towns, but only an implied one in the crossing of a public highway. Nor do the cases referred to enlarge the exception. Ordinarily, a railroad track cannot run any considerable distance within a town without being crossed by some street, either actually opened or merely established. In that case, the fencing cannot be required, for it would shut up a street actually in use, ·or one that has been laid out and dedicated, and may soon be opened. But where the corporation lines embrace portions of the adjacent country not actually laid out as a town, or so laid out that no streets cross the railroad, the reason for the exception does not apply, and the obligation to fence is as imperative as outside the corporation limits.''

Mr. Thornton, in his recent work on Railroad Fences and Private Crossings, after a thorough review of all the authorities, reaches substantially the same conclusion as that announced in the case just cited. The author quotes an Indiana case, in which the Court said, viz.: ''The statute makes no provisions as to the places which may be left unfenced; but the Courts, recognizing the necessity of· excepting streets of towns and cities and places where the business of the railroad companies demand that no fences be made, have engrafted exceptions upon the statute. These exceptions have been made, not to advance the private interests of railroad corporations, but to promote the public good by enabling

the corporations to discharge their duty to the public. These exceptions exist only where a necessity is shown."

Again, it was said in another case: "But whenever a railroad company can build and maintain such a fence without interfering with the rights of the public, or with the free use of . private property, then it is bound to maintain the fence, whether it be in a city, village, or in the country." Thornton on Railroad Fences, etc., Sec. 86.

In another case it was said that there are places within an incorporated town where the railroad may fence, as where there are no streets or alleys, and the public travel would not be interrupted by such fence. *Young v. Hannibal Railroad*, 79 Mo., 336. Such is particularly the case if the adjacent lands are used for farming purposes (66 Mo., 683), or where a block of land is not intended for streets and alleys (38 Ind., 447); but whenever the land is regularly laid out in lots, blocks, or streets, the streets crossing the railroad, which streets have been dedicated to public use as public highways, it would be unlawful for the railroad to fence up the streets in such towns, and it would make no difference in such case whether the town so laid out into streets, etc., was incorporated or not. *Gerren* v. *Hannibal Railroad Co.*, 60 Mo., 405, cited in Thornton on Railroad Fences, Sec. 88.

Again, in the case of *Lathrop* v. *Central Iowa Railway Co.*, 69 Iowa, 105, the Court said: "The acknowl-

edgment and recording of the plat operated to vest in the public the right to occupy and use the ground designated as streets and alleys for highway purposes. This right accrues to the public at once upon the acknowledgment and recording of the plat, and continues until it is divested by some act of the public authorities, or lost by adverse possession. * * * The fencing of the track at the place of crossing against live stock running at large, would have the effect to exclude the public, in many cases, from using the highway at that place, and it follows necessarily that the right to do this does not exist.'' We think these authorities lay down the correct rule, and whenever it appears that a railroad track is intersected by streets and alleys, whether actually opened or merely dedicated to the public use upon a plat, and whether the city, town, or village is incorporated or not, the statutory duty to fence does not apply. ''But where the corporation lines embrace portions of the adjacent country not actually laid out as a town, or so laid out that no streets cross the railroad, the obligation to fence is as imperative as outside the corporation limits.''

When we come to apply these principles to the facts of this particular case, we find nothing in the record to indicate that, from the point where the animal entered upon the track to the point where the accident happened, the railroad track was intersected by any street or crossing, either actually opened or dedicated to the public use. All that the record dis-

closes is, that the point where the mare went upon the track, and the entire distance she ran, as well as the place of the accident, were all within the corporate limits of Tullahoma. It must always appear from the evidence that there was a sufficient reason for not obeying the statute. Thornton on Railroad Fences, Sec. 86. The exceptions to the statute exist only in cases where necessity is shown. The only reason assigned in this case is, that the railroad track was within the limits of an incorporated town, and this, without more, we hold to be insufficient. It results that the company, having failed to fence its track as required by the statute, is liable for the killing of the mare, independent of the question of negligence. *Railroad* v. *Russell*, 92 Tenn., 108.

Affirmed.