95 546
110 609
110 610

## STATE *v.* YARDLEY.

*(Knoxville.* November 9, 1895.)

1. CONSTITUTIONAL LAW. *As to subject of statutes mandatory.*

The constitutional requirement that a statute shall not embrace more than one subject, which shall be expressed in the title, is mandatory. A statute framed in contravention of this provision is invalid. (*Post, p. 552.*)

Constitution construed: Art. II., § 17.

Cases cited and approved: Cannon *v.* Mathes, 8 Heis., 518; Cole Mfg. Co. *v.* Falls, 90 Tenn., 482.

2. SAME. *Title expresses subject.*

The title, "An Act to protect hotel, inn, and boarding house keepers," sufficiently complies with the constitutional requirement that the subject of a statute shall be expressed in its title. The subject expressed in this title is the protection of the classes named. (*Post, pp. 552–554.*)

Constitution construed: Art. II., § 17.

Act construed: Acts 1895, Ch. 67.

3. SAME. *Rule as to generality of title.*

Generality of the title of a statute is not objectionable unless it is made to cover legislation incongruous in itself, or foreign to its object. It is sufficient if the title describes, with adequate clearness, the general purpose and scope of the Act. It is not essential that the title be made an index or epitome of the statute, nor is it necessary that the title should set forth the modes, means, or instrumentalities which may be provided in the statute for its administration and enforcement. (*Post, pp. 553, 554.*)

Cases cited and approved: Luerhman *v.* Tax. Dist., 2 Lea, 425; *Ex parte* Griffin, 88 Tenn., 547; Railroads *v.* Crider, 91 Tenn., 494; Cannon *v.* Mathes, 8 Heis., 519; Frazier *v.* Railroad, 88 Tenn., 140; State *v.* Wilson, 12 Lea, 247; Greene *v.* State, 15 Lea, 711.

State *v.* Yardley.

4. SAME.   *Title embraces only one subject.*

The title, "An Act to protect hotel, inn, and boarding house keepers," embraces only one subject, viz., the protection of the classes mentioned.   (*Post, p. 554.*)

5. SAME.   *Statute embraces but one subject.*

A statute for the protection of hotel, inn, and boarding house keepers embraces but one subject, although, in several sections, it provides (1) that certain fraudulent acts, to the prejudice of hotel, inn, and boarding house keepers, shall be misdemeanors; (2) what shall constitute *prima facie* evidence of fraudulent intent in prosecutions for those acts; and (3) for the sale of baggage and other property left by defaulting patrons of hotels, inns, and boarding houses.   (*Post, pp. 550–552, 554–557.*)

Constitution construed: Art. II., § 17.

Act construed: Acts 1895, Ch. 67.

6. SAME.   *Singleness of statute.   Rule.*

All matters which are naturally and reasonably connected with the subject of a statute, either directly or indirectly, and all measures which will or may facilitate the accomplishment of the purpose of the statute, are properly included in it.   (*Post, pp. 555–557.*)

Cases cited and approved: Cannon *v.* Mathes, 8 Heis., 523; Frazier *v.* Railroad, 88 Tenn., 158; Cole Mfg. Co. *v.* Falls, 90 Tenn., 483; Railroad *v.* Crider, 91 Tenn., 493; Railroad *v.* Russell, 92 Tenn., 108; Railroad *v.* Hughes, 94 Tenn., 450; Railroad *v.* Stonecipher, *ante,* 311.

7. SAME.   *As to repealing statutes.   Definitions.*

In the constitutional provision that " all Acts which repeal, revive, or amend former laws shall recite in their caption, or otherwise, the title or substance of the law repealed, revived, or amended," the word "caption" is synonymous with "title," and the word "otherwise" refers to the body of the repealing, reviving, or amending Act.   (*Post, p. 557.*)

Constitution construed: Art. II., § 17.

Cases cited and approved: State *v.* Runnels, 92 Tenn , 322; Ransome *v.* State, 91 Tenn., 718; *Shelton *v.* State, MS.

---

*This case was not furnished to the Reporter in time to appear at its proper place in this volume, and will therefore be reserved for the next volume.—REPORTER.

8. SAME.  *Same.  Implication.*

Repeals, amendments, and revivors of statutes by implication
are not within the constitutional requirement that "all Act-
which repeal, revive, or amend former laws shall recite in
their caption, or otherwise, the title or substance of the law
repealed, revived, or amended." (*Post, p. 558.*)

Constitution construed: Art. II., § 17.

Cases cited and approved: Insurance Co. *v.* Tax. Dist., 4 Lea, 644;
Maney *v.* State, 6 Lea, 221; Knoxville *v.* Lewis, 12 Lea, 181;
Ballentine *v.* Pulaski, 15 Lea, 633; Poe *v.* State, 85 Tenn., 495;
Railroads *v.* Crider, 91 Tenn., 507; Hunter *v.* Memphis, 93 Tenn.,
571.

9. SAME.  *Same.  Repealing clause.*

That a statute contains an express general repealing clause does
not bring it within the constitutional requirement that the
title or substance of the repealed Act shall be recited in the
caption, or otherwise, by the repealing statute.   The presence
or absence of this repealing clause is unimportant in determin-
ing the character of the statute. (*Post, pp. 558, 559.*)

Constitution construed: Art. II., § 17.

Act construed: Acts 1895, Ch. 67.

Cases cited and approved: Insurance Co. *v.* Tax. Dist., 4 Lea, 644;
Maney *v.* State, 6 Lea, 221; Knoxville *v.* Lewis, 12 Lea, 181;
Ballentine *v.* Pulaski, 15 Lea, 633; Poe *v.* State, 85 Tenn., 495;
Railroads *v.* Crider, 91 Tenn., 507; Hunter *v.* Memphis, 93 Tenn.,
571.

10. SAME.  *Imprisonment for debt.*

A statute is not invalid, as authorizing imprisonment for debt,
which declares it a misdemeanor to fraudulently obtain hotel
accommodations, or to fraudulently remove baggage, to defraud
the proprietor.   The imprisonment is inflicted for the debtor's
fraud, not for his debt. (*Post, pp. 559–563.*)

Constitution construed: Art. I., § 18.

Act construed: Acts 1895, Ch. 67.

11. SAME.  *Presumption as to constitutionality of statute.*

All intendments will be made, and all doubts resolved in favor of
that interpretation of a statute which will support it and avoid
conflict with the Constitution. (*Post, p. 560.*)

Cases cited and approved: Cole Mfg. Co. *v.* Falls, 90 Tenn., 469;
Railroads *v.* Crider, 91 Tenn., 507; Ellis *v.* State, 92 Tenn., 93.

State *v.* Yardley.

12. SAME. *Trial by jury.*

The right of trial by jury is not abridged by a provision in a statute that proof of certain enumerated facts shall constitute *prima facie* evidence of fraudulent intent in the prosecution of an offense created by the statute. (*Post, pp. 564–567.*)

Constitution construed: Art. I., §§ 6, 8, 9.

Act construed: Acts 1895, Ch. 67.

Cases cited: Railroads *v.* Crider, 91 Tenn., 498–9; McGuire *v.* State, 6 Bax., 621; Willcox *v.* State, 3 Heis., 118; Hughes *v.* State, 8 Hum., 75; Fields *v.* State, 6 Cold., 526; Poe *v.* State, 10 Lea, 680; Boyer *v.* State, 93 Tenn., 220; Coffee *v.* State, 3 Yer., 283; Draper *v.* State, 4 Bax., 246; Gray *v.* State, 4 Bax., 331; Witt *v.* State, 6 Cold., 5; Epperson *v.* State, 5 Lea, 299.

13. STATUTES. *Construed in light of all their provisions.*

The clause in the Act for the protection of hotel, inn, and boarding house keepers, which provides that refusal of a party to pay for food, lodging, or accommodations, shall constitute *prima facie* evidence of fraudulent intent, is to be construed with reference to the other provisions of the statute, and as referring to a fraudulent refusal. (*Post, p. 567.*)

Act construed: Acts 1895, Ch. 67.

---

## FROM KNOX.

---

Appeal in error from Criminal Court of Knox County. THOS. A. R. NELSON, Judge.

Attorney-general PICKLE, GRAFTON GREEN, and S. G. HEISKELL for State.

CHARLES NELSON, R. A. MYNATT, and E. E. HOUK for Yardley.

CALDWELL, J. Sallie Yardley was indicted for

State v. Yardley.

obtaining accommodations, as a boarder, in the boarding house of Amanda Smith, in Knoxville, and thereafter unlawfully and surreptitiously removing her baggage and property from said boarding house, without the consent of the proprietor thereof or the payment of her bill. On motion of the defendant the indictment was quashed, and the State appealed in error.

The substance of the motion to quash is as follows: That the Act upon which the indictment is based is unconstitutional (1) because its subject is not stated in the title; (2) because the title embraces more than one subject; (3) because the Act seeks to repeal, amend, and revive former laws, and does not recite in its caption, or otherwise, the title or substance of the laws repealed, amended, or revived; and (4) because the Act was intended to make the creation of certain debts a criminal offense, punishable by imprisonment.

The Court adjudged all the grounds of the motion well taken, and, therefore, held the indictment bad.

The Act in question is in the following words and figures:

"AN ACT to protect hotel, inn, and boarding house keepers.

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee*, That persons who shall, at any hotel, inn, or boarding house, order and receive, or cause to be furnished, any food or accommodation, with intent to defraud the owner or

State *v.* Yardley.

proprietor of such hotel, inn, or boarding house out of the value or price of such food or accommodation; and any person who shall obtain credit at any hotel, inn, or boarding house, by the use of any false pretense or device, or by fraudulently depositing at such hotel, inn, or boarding house any baggage or property of less value than the amount of such credit, or of the bill by such person incurred, unless credit be given by express agreement; *and any person who, after obtaining credit or accommodation at any hotel, inn, or boarding house, and shall surreptitiously remove his or her baggage or property therefrom, shall, upon conviction, be adjudged guilty of a misdemeanor, and be punished accordingly.*

"Sec. 2. *Be it further enacted,* That proof that lodging, food, or other accommodation, was obtained by false pretense, or by false or fictitious show or pretense of baggage; or that the party refused to pay for such food, lodging, or accommodation on demand; or that he absconded without paying, or offering to pay, for such food, lodging, or other accommodation; or that he surreptitiously removed, or attempted to remove, his or her baggage, shall be *prima facie* proof of the fraudulent intent mentioned in Section 1 of this Act.

"Sec. 3. *Be it further enacted,* That at any time after thirty (30) days after the person incurring the debt or obligation has left the hotel, inn, or boarding house, and the debt or obligation being still due and unpaid, the owner or proprietor of said hotel,

inn, or boarding house, may sell, at public auction, for cash, at hotel or boarding house office, any or all baggage or property, left at said hotel, inn, or boarding house, to satisfy said debt or obligation, without any process at law or equity; *Provided*, That said sale shall be advertised by written or printed posters for at least ten days before said sale.

" SEC. 4. *Be it further enacted*, That all laws, and parts of laws, in conflict with this Act be, and the same are hereby, repealed." Acts 1895, Ch. 67.

It will be observed that the indictment before us is framed under the third clause of the first section of the Act, which we have indicated by italics. The Act is assailed as a whole, in its title and in its body, and as a whole we consider it, treating the objections made in the motion to quash in the order in which they are heretofore mentioned.

The first and second objections are directed at the title of the Act, and are intended to invoke the second clause of Section 17 of Article II. of the State Constitution, which clause declares that " no bill shall become a law which embraces more than one subject, that subject to be expressed in the title." That requirement of the organic law is mandatory, and, unless obeyed in every instance, the legislation attempted is invalid and of no effect whatever. *Cannon* v. *Mathes*, 8 Heis., 518; *Cole Manufacturing Co.* v. *Falls*, 90 Tenn., 482.

1. The subject of the present Act is protection

to hotel, inn, and boarding house keepers, and that subject is plainly and unmistakably expressed in the title, which is as follows: "An Act to protect hotel, inn, and boarding house keepers." It is a vain impeachment of the law to say that it is bad because the means or instrumentalities by which that protection is to be afforded are not recited in the title. Recitation of details in the title of an Act is not necessary to its validity. It is sufficient to state the object in the title, and the manner of its accomplishment in the body of the Act. *Luerhman* v. *Taxing District,* 2 Lea, 425; *Ex parte Griffin,* 88 Tenn., 547; *Railroads* v. *Crider,* 91 Tenn., 494.

A late author says: "In regard to the particularity required in the title of a statute, it is the accepted doctrine that it is sufficient if the title describes, with adequate clearness, the general purpose and scope of the Act. It need not amount to an index or epitome of the statute, nor is it necessary that the title should set forth the modes, means, or instrumentalities provided in the law for its administration and enforcement." Black's Const. Law, Sec. 107.

It cannot be truly said, therefore, that the title under consideration does not express the subject of legislation because it fails to indicate the particular provisions to be made. Nor can it be successfully contended that it fails to express the subject because of the general terms used for that purpose. Generality of title is not objectionable, so long as

it is not made to cover legislation incongruous in itself, or which, by fair intendment, may not be considered as having a necessary or proper connection with the subject expressed. Cooley's Const. Lim. (5th Ed.), p. 174; *Cannon* v. *Mathes*, 8 Heis., 519; *Frazier* v. *Railway Co.*, 88 Tenn., 140; *State* v. *Wilson*, 12 Lea, 247; *Greene* v. *State*, 15 Lea, 711.

2. The title does not embrace more than one subject. That it names its proposed beneficiaries in three classes—as, hotel keepers, inn keepers, and boarding house keepers—does not make it double; and yet there is no other ground even so plausible as that upon which to rest the insistence that it embraces more than one subject. The number of persons or classes of persons or kinds of business to be affected by a particular Act has no bearing upon the question as to whether the title embraces one subject or more. The subject expressed in the title may be single, and still authorize legislation for every individual in the State, as in case of general assessment Acts, etc.

3. Does the body of the Act embrace more than one subject? Though not raised in the motion to quash, this is a question to be considered in determining the validity or invalidity of the Act. If it should be answered in the affirmative, then the Act is void, without reference to the question raised in that motion.

The first section declares that certain fraudulent

acts, to the prejudice of hotel, inn, and boarding house keepers, shall be misdemeanors; the second section declares what shall constitute *prima facie* evidence of fraudulent intent in prosecutions for those acts; and the third section authorizes the sale of baggage or other property left by defaulting patrons of hotels, inns, and boarding houses.

The first and second sections, combined, are intended to prevent and suppress, by criminal punishment, the fraudulent acts therein enumerated; and the third section is intended to reduce the injury resulting from such acts as much as possible by providing a speedy civil remedy. They all tend to the same end, and facilitate the same purpose. They are consistent parts of one general scheme, promotive of the object and germane to the subject expressed in the title—namely, protection to hotel, inn, and boarding house keepers. This being true, the Act, though consisting of different parts, embraces but one subject in legal contemplation.

Sutherland, in the ninety-third section of his work on Statutory Construction, says: "Where the title of a legislative Act expressed a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will or may facilitate the accomplishment of the purpose so stated, are properly included in the Act, and are germane to its title."

Chief Justice Nicholson, speaking for this Court, in the case of *Cannon* v. *Mathes,* said: "It is ob-

vious, therefore, that the true rule of construction, as fully established by the authorities, is, that any provision of the Act, directly or indirectly relating to the subject expressed in the title, and having a natural connection therewith, and not foreign thereto, should be held to be embraced in it." 8 Heis., 523.

That rule, though expressed in somewhat different phraseology, has been applied in several subsequent cases, some of which we cite. *Frazier* v. *Railway Co.*, 88 Tenn., 158; *Cole Mfg. Co.* v. *Falls*, 90 Tenn., 483; *Railroads* v. *Crider*, 91 Tenn., 493.

The Act construed and adjudged to embrace but one subject in the last named case, provides (1) that any person, corporation, company, lessee, or agent, owning or operating any railroad in this State, shall be liable for any injury done to live stock upon an unfenced track; (2) that three house-holders may be appointed to assess the damage resulting from such injury; (3) that the appraisement by such appraisers shall be *prima facie* evidence of the amount of damage in any action for such injury; (4) that the defendant in such action shall be liable also for a reasonable attorney's fee for plaintiff's counsel; (5) that the master of the section of road on which the injury was done shall give notice thereof to the owner, his agent, or the nearest Magistrate; and (6) that any section master who knowingly fails to give such notice, shall be guilty of a misdemeanor. Acts 1891, Ch. 101.

That Act, like this one, it will be observed, treats

State *v.* Yardley.

of both criminal and civil remedies, and declares what
facts, when established, shall constitute *prima facie*
evidence (of amount of civil liability under the one
Act and of the intent to commit the offense pro-
hibited by the other), and, in addition, that Act
contains three provisions in excess of those con-
tained in this one, in consequence of which it is,
to that extent, more comprehensive in its scope and
purpose. Yet that Act was, in the case cited, held
to embrace but one subject, and it has been applied
and enforced as a valid law in subsequent cases.
*Railroad* v. *Russell*, 92 Tenn., 108; *Railroad* v.
*Hughes*, 94 Tenn., 450; *Railroad* v. *Stonecipher*,
*ante*, p. 311. The subject of legislation is single
in each of the two Acts, though the liabilities de-
clared therein are both criminal and civil, and the
remedies prescribed are more than one.

4. Passing next to the third ground of the mo-
tion to quash, the inquiry is whether or not the
Act is in violation of the third clause of Section
17, Article II. of the Constitution, which requires
that " all Acts which repeal, revive, or amend former
laws shall recite in their caption, or otherwise, the
title or substance of the law repealed, revived, or
amended." The word " caption," as here used, is
synonymous with " title," and the word " otherwise "
refers to the body of the repealing, reviving, or
amending Act. *Thomas Shelton* v. *The State*, MS.;
*State* v. *Runnels*, 92 Tenn., 322; *Ransome* v. *State*,
91 Tenn., 718.

Neither in its "caption" nor "otherwise" (title nor body) does the Act before us recite either "the title or substance" of any former law. No former law is mentioned or designated in any way in any part of that Act; hence, the Act is necessarily void if that constitutional requirement is applicable to any part of it. That requirement does not apply, however, to all legislation. It relates alone to those Acts which expressly repeal, revive, or amend former laws, and does not embrace implied amendments (*Shelton* v. *The State*, MS.), nor implied repeals (*Home Insurance Co.* v. *Taxing District*, 4 Lea, 644; *Money* v. *The State*, 6 Lea, 221; *Knoxville* v. *Lewis*, 12 Lea, 181; *Ballentine* v. *Pulaski*, 15 Lea, 633; *Poe* v. *The State*, 85 Tenn., 495; *Railroads* v. *Crider*, 91 Tenn., 507; *Hunter* v. *Memphis*, 93 Tenn., 571), nor implied revivors.

If any former law is amended or revived by this Act, that result is accomplished by implication alone. There is no express amendment or revivor. No word indicating a purpose to amend or revive any former law is used in any part of the act.

With equal propriety and certainty it may be said that no express repeal was intended, and that any repeal actually effected was by implication simply. The words of the fourth section, "that all laws and parts of laws in conflict with this Act be, and the same are hereby, repealed," do not make it an expressly repealing act. Really, that section adds nothing of virtue or meaning to the Act, and takes

nothing from it.    All prior conflicting laws and parts of laws were impliedly repealed by the former sections of the Act, and, as a consequence, no such laws or parts of laws were left for the fourth section to operate upon.    That section was, therefore, useless, and of no force or effect whatever.    It had no office to perform, and performed none.    Its presence in the bill did not make the Act a repealing law or a nonrepealing law, and it will not be regarded for the purpose of vitiating the law, nor will it be permitted to have that effect.    Such provision is of frequent occurrence in the concluding section of legislative Acts.    It has generally appeared, and as often been disregarded, in those cases in which the Court has held that the constitutional requirement last mentioned did not apply, and that repeals were wrought by implication.    See Acts 1879, Ch. 84, Sec. 13, and 4 Lea, 644; Acts 1879, Ch. 186, Sec. 4, and 85 Tenn., 495; Acts 1891, Ch. 101, Sec. 8, and 91 Tenn., 507; Acts 1893, Ch. 89, Sec. 12, and 93 Tenn., 571; Acts 1881, Ch. 171, Sec. 88, and 12 Lea, 181.

It may be repeated that this Act does not expressly repeal, revive, or amend any former law, therefore it is not obnoxious to the third clause of Section 17, Article II., of the Constitution.    If invalid at all, it must be so for some reason or reasons yet to be considered.

5.    Is it invalid for the fourth and last reason assigned in the motion to quash?    That is to say,

does it violate Section 18, Article I., of the Constitution, which declares that "the Legislature shall pass no law authorizing imprisonment for debt?" It does not, in terms, provide imprisonment, or any other specific punishment. It only declares that certain things shall be misdemeanors and receive punishment as such. That is sufficient, however, to authorize imprisonment, for misdemeanors whose punishment is not specifically prescribed by the law creating them are punishable by fine and imprisonment, one or both, in the discretion of the Court. 1 Bishop on Criminal Law, Sec. 719; *Atchison* v. *The State*, 13 Lea, 275. But that does not decide the whole question. The Act authorizes imprisonment—that much is certain—but is that imprisonment for debt, or for something else? To determine that, the Act must be construed, and, in ascertaining its true construction, all intendments will be made and all doubts will be resolved in favor of that interpretation which will support the Act and avoid conflict with the Constitution. Sutherland on Stat. Con., Sec. 332; Cooley's Const. Lim. (5th Ed.), 218; Black's Const. Law, Sec. 28; 3 Am. & Eng. Enc. Law, 673–4; *Cole Mfg. Co.* v. *Falls*, 90 Tenn., 469; *Railroads* v. *Crider*, 91 Tenn., 507; *Ellis* v. *State*, 92 Tenn., 93. Applying that rule, the Act assailed in this case will not be held to impose or authorize imprisonment for debt if any other reasonable construction can be placed upon the language used therein.

The threefold provision is that any person (1) who shall procure the accommodations mentioned "with intent to defraud" the person furnishing them "out of the value or price" thereof, or (2) who shall obtain credit for such accommodations "by the use of any false pretense or device, or by fraudulently depositing" baggage or other property, or (3) who, having obtained credit, "shall surreptitiously remove his or her baggage or property," shall be "guilty of a misdemeanor, and be punished accordingly." Section 1. Or, stating it more briefly still, the Act provides that any person who fraudulently obtains such accommodations, or who fraudulently removes his baggage or other property, shall be guilty of a misdemeanor.

The offense consists, not in the creation of a debt, nor in its nonpayment, but rather in the fraud through which credit may be procured or payment evaded. The latter and not the former, is the thing for which punishment is to be inflicted. As well said by one of the attorneys for the State, the legislative intent was "to punish the debtor for his fraud, and not for his debt." Honest debtors are not within the Act. It relates to those alone who shall intentionally pursue a certain course of fraudulent conduct, and that course of fraudulent conduct, intentionally pursued, constitutes the offense for which punishment is prescribed, and without which punishment will not be inflicted. Without intentional fraud no offense is committed, no penalty incurred.

36—11 P

The intention of the Legislature, as we get it from the words and the tenor of the Act, was to authorize punishment, including imprisonment, not for debt, but alone for particular intentional frauds, whereby the offender may obtain the property of his victim, for temporary use in case of lodging, and for absolute consumption in case of food, without compensation; or whereby, after obtaining such accommodations, he would defeat the landlord's lien upon his baggage.

To our minds, this is not only a fair and reasonable construction of the Act, but the most easy and natural one that can be given the language employed. The manifest object was to protect the property and the lien of the landlord against those persons who would, by intentional fraud, wrongfully use or consume the one or defeat the other; and, to make that protection effectual, the offender is subjected to punishment for his fraud, whether practiced in the wrongful use or consumption of the landlord's property or in the removal of his own property upon which the landlord has a lien. In either case, the landlord has an interest in property which the State, as a matter of public policy or of individual right, may well protect by the passage and enforcement of penal statutes such as that before us. Of like nature are all our laws against false pretenses (Code, M. & V., 5468 to 5472, inclusive), and against the removal of mortgaged property. *Ib.*, 5626, Subsec. 3.

State *v.* Yardley.

Statutes similar to that impeached in this case seem to have been passed in many of the States, including Alabama, Illinois, Iowa, Michigan, Minnesota, Missouri, Nebraska, New York, and Ohio. But, so far as we are aware, the question as to whether or not such legislation violates the usual constitutional prohibition of imprisonment for debt, has been considered by only one Court of last resort. Hearing a case on appeal from a judgment refusing to discharge the petitioner on a writ of *habeas corpus*, the Supreme Court of Alabama said: "There is nothing in the point raised in the application, that the Act 'for the protection of landlords, proprietors, or keepers of hotels and boarding houses,' . . . is violative of Sections 21 and 23 of Article I. of the Constitution, which forbids imprisonment for debt, or the making of laws giving any special privileges or immunities. The Act is in line with our other statutes against false pretenses, frauds, cheats, acts to injure, and the like. One who violates the Act is imprisoned, not for the debt he owes the proprietor, and not to make him pay it, but to punish him for a wrong he has perpetrated, which is made a crime. And this is no more of a special privilege to the hotel keeper than the statute against burglary from a store or a dwelling is to the merchant who owns the store, or to the owner of the dwelling. *Habeas corpus* denied." *Ex parte King*, Southern Reporter, Vol. XV., pp. 524, 525.

6. The second section of the Act does not impair the right of trial by an impartial jury, as guaranteed by Sections 6, 8, and 9, Article I., of the Constitution. It simply provides that proof of certain things therein enumerated shall be "*prima facie*" evidence of fraudulent intent. The language used indicates no purpose to abridge the right of trial by jury, nor can it be held, by any proper construction, to have that effect.

A person arraigned under the first section of the Act is left to his trial by an impartial jury, and is allowed the presumption of innocence as fully as in any other case. That right and that presumption are in no degree affected by the second section. Neither can be impaired by a mere provision that proof of certain facts shall be taken as *prima facie* evidence of a fraudulent intent, and, yet, that is the sum total of the second section.

It cannot be true that a declaration by the Legislature, or a holding by the Courts, that proof of certain facts is *prima facie* or presumptive evidence of one ingredient of an offense—as, of guilty intent—is an invasion of the peculiar province of the jury, or an impairment of the defendant's sacred right of jury trial.

In every case the defendant is entitled to trial by an impartial jury, and to the benefit of a presumption of innocence, but that right and that presumption can no more preclude a presumption of guilty intent from sufficient proof adduced than they can preclude the introduction of proof altogether.

The Courts have long held that juries may, and should be, instructed that proof of recent possession of stolen property, unexplained, affords *prima facie* or presumptive evidence of guilt (1 Greenl. Ev., Sec. 34; *McGuire* v. *The State*, 6 Bax., 621; *Wilcox* v. *The State*, 3 Heis., 118; *Hughes* v. *The State*, 8 Hum., 75; *Fields* v. *The State*, 6 Cold., 526; *Poe* v. *The State*, 10 Lea, 680; *Boyer* v. *State*, 93 Tenn., 220), and that, upon a charge of murder, proof of the killing, without more, raises a presumption of malice. 1 Greenl. Ev., Sec. 34; *Coffee* v. *The State*, 3 Yer., 283; *Draper* v. *The State*, 4 Bax., 246; *Gray* v. *The State, Ib.*, 331; *Witt* v. *The State*, 6 Cold., 5; *Epperson* v. *The State*, 5 Lea, 299.

The power of the Legislature to prescribe rules of evidence, and to declare what shall be · evidence, is practically unrestrained, and legislation to those ends will be upheld so long as it is impartial and uniform, and does not "preclude a party from exhibiting his rights." Cooley on Const. Lim. (5th Ed.), pp. 452, 453, 454.

In the case of *Railroads* v. *Crider*, 91 Tenn., 498–9, this Court so held, and sustained as constitutional a provision (Acts 1891, Ch. 101, Sec. 4), that the report of appraisers, as to value of live stock killed, and as to amount of damage to live stock injured by moving train upon unfenced track, "shall be *prima facie* evidence" of such value or damage in the event of suit therefor.

That was a civil case, dealing with a provision as to evidence of civil liability, it is true, but that fact does not avoid the force of the decision as a precedent in this case. A man can no more be deprived of his property, than of his life or liberty, by unconstitutional legislation. Const., Art. I., Sec. 8.

It is not an unusual or prohibited thing for the Legislature to declare in penal statutes what particular wrongful acts, when proven, shall constitute certain criminal offenses, or the ingredients thereof. One striking instance of the rightful exercise of that power is found in Code (M. & V.), § 5349, which is as follows:

"Every murder perpetrated by means of poison, lying in wait, or by any other kind of willful, deliberate, malicious, and premeditated killing, or committed in the perpetration of, or attempt to perpetrate, any arson, rape, robbery, burglary, or larceny, is murder in the first degree."

When the fact that murder, as defined in the preceding section (5348), has been committed is established by proof, and it is further shown that the offense was "perpetrated by the means of poison," or by "lying in wait," or in any other one of the several ways mentioned, then the offender is guilty of "murder in the first degree"—so declared by the Legislature.

Thus, the facts that shall constitute one of the highest crimes known to our law are set forth in a legislative Act whose validity is unquestioned and

State *v.* Yardley.

unquestionable, and under which scores of unfortunate men have been executed or consigned to imprisonment for life. Would that act have been any more subject to adverse criticism, on constitutional grounds, had it merely declared that proof of the killing, by the means or in the manner mentioned, should be *prima facie* or presumptive evidence of an intent to commit murder in the first degree? We apprehend not.

7. It should be added, by way of construction, that the clause, "or that the party refused to pay for such food, lodging, or accommodation, on demand," used in the second section to describe one of the acts, which, when proven, shall be taken as *prima facie* evidence of fraudulent intent, does not refer to, or include, an honest refusal, a mere failure or declination, to pay on demand. Standing alone, the words used would naturally embrace every refusal, but, when they are considered in connection with other parts of the Act, and in their true relation thereto, it is manifest that only a fraudulent refusal or evasion was in the legislative mind when that clause was introduced.

Every other clause of that section, and every clause of the first section, by express terms, relates to fraudulent conduct, and to that alone, as the matter for investigation and punishment in the Courts. Only fraudulent acts are contemplated and embraced in the first and second sections.

Reverse and remand.