J. E. GOODBAR *et al. v.* CITY OF MEMPHIS *et al.*

(*Jackson.*    April Term, 1904.)

1. **STATUTES. Amendment becomes incorporated in the original act.**

   An amendment becomes a part of the original act and becomes incorporated therein as though contained in the original enactment from the date the amendment is effective. (*Post, p.* 34.)

2. **SAME. Same. Amendment by referring to the original act only.**
   Where amendments to a statute are sought to be amended, it is not necessary to refer to them, but it is sufficient to recite in the proposed amendatory act the title or substance of the original act, of which said amendments, have become a part. (*Post, p.* 34.)

   Constitution cited and construed:   Art. 2, sec. 17.

3. **SAME. Same. Same. Recital of amendments is surplusage, where original act is recited.**
   Where in the proposed amendatory act the title or substance of the original act is cited, a recital of the amendments thereto, which are sought to be amended, is unnecessary surplusage. (*Post, p.* 35.)

   Constitution cited and construed:   Art. 2, sec. 17.

4. **SAME. Caption of amendatory act reciting title of the amended act need not indicate the particular character of amendment, when.**
   The title or caption of an amendatory statute need not do more than recite the title or substance of the act amended, and need not indicate the particular character of the proposed amendment, provided the amendment is germane to the subject of the original act, and is embraced within its title. (*Post, pp.* 35, 36.)

Goodbar v. Memphis.

Acts cited and construed:  1879, ch. 11; 1903, ch. 366.

Constitution cited and construed:  Art. 2, sec. 17.

Cases cited and approved:  Hyman v. State, 87 Tenn., 109; State v. Algood, 87 Tenn., 163.

**5.  SAME.  Same.  Case in judgment.**

Where a statute designed as a city charter and providing for an elaborate system of municipal government is amended by a subsequent statute providing, in substance, for charges on certain public utilities, for the succession of the office of mayor and vice mayor, for the abolishment of certain municipal offices, for certain boards to make contracts, for the prohibition of the levy of more than a specified tax, for the establishment of the office of tax assessor, and for the election of a city attorney instead of his appointment, such provisions of the amendatory act are germane to the original act, and the amendatory act reciting the title of the original act need not indicate in its title the particular character of the amendment. (*Post, pp.* 23-37.)

Acts cited and construed:  1879, ch. 11; 1903, ch. 366.

Constitution cited and construed:  Art. 2, sec. 17.

**6.  SAME.  Same.  Amendatory act is not invalid where its caption recites title of amended act, and contains surplusage that is restrictive.**

Where an amendatory act is germane to the amended act, and recites in its caption the title of the act proposed to be amended, it is not unconstitutional and invalid, because its caption contains superfluous matter that is distinctly restrictive, and that fails to express the character of the amendment attempted to be expressed. (*Post, pp.* 37, 38.)

Acts cited and construed:  1879, ch. 11; 1903, ch. 366.

Constitution cited and construed:  Art. 2, sec. 17.

Goodbar v. Memphis.

7. **SAME.** Special and local laws are not repealed by general legislation, when.

The general rule is that special and local laws are never deemed to be repealed by general legislation, except upon the most unequivocal manifestations of an intent to that effect. (*Post,* *p.* 38.)

8. **SAME.** Same. Case in judgment.

An act (Acts 1903, ch. 366) expressly applying to the assessment and collection of taxes for the city of Memphis, and to other matters pertaining to said city, is not repealed by implication by an act (Acts 1903, ch. 258) applying to state and county taxes and to taxes levied in certain municipal corporations, which are expressly described, and necessarily excluding the city of Memphis. (*Post, pp.* 38, 39.)

Acts cited and construed: 1903, chs. 258 and 366.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County— F. H. HEISKELL, Chancellor.

MALONE & MALONE and T. K. RIDDICK, for complainants.

W. B. HENDERSON, EDGINGTON & EDGINGTON, and RANDOLPH & RANDOLPH, for defendants.

---

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Complainants, who are citizens and taxpayers of Shelby county, file the present bill against the tax assessor of the city of Memphis and his assistant for the purpose of enjoining the assessment of their property for municipal taxation in accordance with the provisions of chapter 366, p. 1097, Acts 1903.

The bill is based upon the proposition that the act of 1903 is unconstitutional, because in contravention of section 17 of article 2 of the constitution, which provides as follows:

"No bill shall become a law which embraces more than one subject, that subject to be expressed in the title.

"All acts which repeal, revise or amend former laws shall recite in their caption or otherwise the title or substance of the law repealed, revised or amended."

The defendants interposed a demurrer to the bill, which was sustained by the chancellor, and the bill dismissed.

The act which is now the subject of attack is entitled as follows:

"An act to be entitled, an act to amend an act to establish taxing districts in this State and to provide the means of local government for the same, being chapter 11 of the Acts of 1879, so as to authorize such taxing districts to regulate and control the charge of certain public utilities, companies and corporations, now or hereafter operating within such taxing districts and to fix the succession of the office of mayor and vice mayor in

the event of a vacancy in either one or both of these of-
fices; and to abolish the office of chairman of the board
of public works; and to permit the board of fire and po-
lice commissioners to make contracts in all cases of ac-
tual emergency, where the amount of said contract does
not exceed the sum of one thousand dollars; and to vest
the legislative council with the power to determine in
what cases and to what extent the city ordinances when
passed by city council shall be published; and to em-
power the board of fire and police commissioners to fix
and to regulate the scale of salaries of the officers of
the fire and police departments and to fix the rank and
number of such officers; and to amend section 1 of chap-
ter 172 of the Acts of 1895, and section 4 of chapter 84
of the Acts of 1893, and section 1 of chapter 19 of the
Acts of 1899, prohibiting the city of Memphis from
levying more than six hundred thousand dollars of taxes
for any one year within the original territory of such
city, so as to provide that the gross levy for general pur-
poses shall not exceed one million one hundred thou-
sand dollars for the entire city of Memphis, and to ap-
portion the same and to establish the office of tax asses-
sor and his assistant for such taxing district and to fix
the duties of same, and to fix their compensation and
bond, and to provide a board of equalization to revise
assessments made by such assessor, and to amend sec-
tion 14, chapter 11, of the Acts of 1879, and section 2
of chapter 149 of the Acts of 1901, so as to provide for
the election of the city attorney in cities and taxing dis-

tricts having a population of sixty thousand or more, according to the federal census of 1890, or of any subsequent federal census."

The fundamental proposition presented by the demurrer is that this is a restrictive title, not a general one, and that the legislation proposed by the body of the act is beyond the scope of the title. Counsel cite *State* v. *Bradt,* 103 Tenn., 591, 53 S. W., 944, in which case it was said, viz. :

"It may be that a title could have been framed in such general language as to express one general subject embracing and warranting all the legislation found in the body of this act, but that was not done. On the contrary, the title actually employed is self-limiting and restrictive. It relates alone to the 'filing and recording of labels, trademarks,' etc., ' and their protection,' and by its narrow terms limits the legislation permissible thereunder to that narrow subject. Obviously the subject, as expressed in the title, is not broad enough in its scope to include the other subjects embraced in the act; hence their presence brings the legislation within the prohibition of the constitution, and renders it null and void."

See, also, *Saunders* v. *Savage,* 108 Tenn., 340-345, 67 S. W., 471; *State* v. *Brewing Company,* 104 Tenn., 726, 59 S. W., 1033, 78 Am. St. Rep., 941.

Counsel then divide the title of this act into paragraphs, and undertake to show that the particular sub-

ject-matter presented in each paragraph is not conformed to in the body of the act.

Illustrating the position of learned counsel, the first paragraph of the title of this act is thus stated, viz. :

"An act entitled an act to amend an act to establish taxing districts in this state and to provide the means of local government for the same, being chapter 11 of the Acts of 1879, so as to authorize such taxing district to regulate and control the charge of certain public utility companies and corporations now and heretofore operating within such taxing district."

The subject presented in this paragraph is embodied in subsection 1 of the act, as follows:

"The legislative council of such taxing district is hereby vested with power and authority to fix and regulate from time to time, within reasonable limits, a scale of charges for the product or services of all district telegraph companies, gas companies, electric light or power companies, street car companies, belt line companies, switching companies, now or hereafter enjoying or operating any rights or privileges to use or occupy any of the streets, alleys or public grounds within the territory of such taxing district."

Now the criticism made by counsel is that the body of the act presents a subject not contained in the title. It is said the subject presented in the caption is the power to control the charge of certain public utilities, while in the body of the act the power is also conferred of fixing

and regulating the scale of charges of the product of such utilities.

It is said the product of a gas company is a distinct thing from the service to the public of gas, for which a charge is made, and that the purpose disclosed in the body of the act is not only to regulate the scale of charges for services, but the scale of charges for the product as well.

Again, the eighth paragraph (subsection 2) of the title reads as follows:

"An act entitled an act to amend section 1 of chapter 172 of the Acts of 1895, and section 4 of chapter 84 of the Acts of 1893, and section 1 of chapter 19 of the Acts of 1899, prohibiting the city of Memphis from levying more than six hundred thousand dollars for any one year within the original territory of such city, so as to provide that the gross levy for general purposes shall not exceed one million one hundred thousand dollars for the entire city of Memphis and to apportion the same."

The criticism upon this paragraph of the title is that it proposes amendments to the acts of 1893, 1895, and 1899 by a mere reference to the section and chapter of said acts, and the year of enactment, without stating the substance of the law proposed to be amended, either in the caption or otherwise. It is insisted such amendatory act is void, under the authority of *Railroad* v. *State,* 2 Cates, 598, 75 S. W., 730, and *Burnett* v. *Turner,* 87 Tenn., 124, 10 S. W., 194.

Moreover, it is said there is nothing in section 4, c.

84, p. 110, Acts 1893, with reference to limiting the levy of taxes for the city of Memphis to the sum of $600,000.

It is said the whole scope of said act was to prohibit the legislative council of the city of Memphis, in making its levy of taxes, from exceeding $1.75 of the $100 for the old wards of the city, and $1.24 of the $100 for the ninth and tenth wards thereof.

The conclusion reached by counsel is that neither the title nor the substance of the act of 1893 proposed to be amended is anywhere recited in this caption.

The act of 1895, which is sought to be amended by the act of 1903, does provide that the total gross tax levy for every purpose, exclusive of the special tax for any one year on realty, personalty, and merchants' capital, shall not be more than $600,000.

The act of 1899 (Acts 1899, p. 29, c. 19, section 1) which is sought to be amended provides as follows:

"And said legislative council is vested with the power of making the total gross levy for every purpose, exclusive of the park tax and special sewer tax for any one year, on realty, personalty, and merchants' capital, more than six hundred thousand dollars, provided, however, that the tax levy in and on the first eleven wards of said city shall not exceed, exclusive of the park tax and the special sewer tax, six hundred thousand dollars."

It is said the attempt to amend the acts of 1893, 1895, and 1899 is void, because the purview of the new act was not germane to the acts sought to be amended.

Again, the title of the act of 1903, so far as pertains to the assessor, is as follows:

"And to amend section 1 of chapter 172 of the Acts of 1895, and section 4 of chapter 84 of the Acts of 1893, and section 1, chapter 19, Acts of 1899, prohibiting the city of Memphis from levying more than six hundred thousand dollars of taxes for any one year, within the original territory of such city, so as to provide that the gross levy for general purposes shall not exceed one million one hundred thousand dollars for the entire city of Memphis, and to apportion the same, and to establish the office of tax assessor and his assistant for such taxing district, and to fix the duties of same, and to fix their compensation and bond, and to provide a board of equalization to revise assessments made by such assessor."

It is said there is nothing in the supposed substance of the acts of 1893, 1895, and 1899, as quoted, which remotely suggests the subject of creating the office of tax assessor.

Again, it is said the act is void because it contains more than one subject. Amendments are made to the general law pertaining to taxing districts, and special enactments are proposed, pertaining alone to the city of Memphis.

Further, it is said, that portion of the act providing that the city attorney should be elected, and commencing at section 4, is undoubtedly void, for neither in the title of the act, nor in the body thereof, is any attempt what-

ever made to recite the title or substance of the acts of 1879 or of 1901 of which the act in question proposes to be an amendment. *Railroad* v. *State,* 2 Cates, 598, 75 S. W., 730; *Burnett* v. *Turner,* 87 Tenn., 126, 10 S. W., 194.

Again, criticism is made on the provisions of the act for the succession of mayor and vice mayor.

Subsection 2 commences thus:

"Subsec. 2. Be it further enacted that in the event of a vacancy in the office of mayor or vice mayor of such taxing district, the same shall be filled in the following manner, to wit:

"Should the office of mayor become vacant for any cause, then the vice mayor shall become the mayor," etc.

Subsection 3 then provides that, in case the office of vice mayor becomes vacant, the police and fire commissioner shall become vice mayor.

Then, again, subsection 4 provides that, in the event a vacancy should occur in the office of fire and police commissioner, who is not the mayor or vice mayor, such vacancy shall be filled by the other two members of the fire and police board, etc.

It is said these provisions purport to be amendments to chapter 11 of the Acts of 1879; still they speak of the mayor and vice mayor as though they were the executive officers of taxing districts created by the act of 1879, whereas in fact no such officers are anywhere mentioned in said act, but in point of fact the chief executive of such taxing district is declared to be the president of the board of fire and police commissioners.

It should be said, however, that by an amendment to the act of 1879, adopted in 1891, the offices of mayor and vice mayor were created.

Lastly, it is said that chapter 366, Acts 1903, was repealed by the subsequent act of 1903, page 632, c. 258, passed at the same session of the legislature.

It will be seen that chapter 366 (act under consideration) was approved by the governor on April 13, 1903, whereas three days thereafter, viz., on April 16, 1903, the governor of the State approved another act (chapter 258, Acts 1903), the title to which is in these words:

"An act to provide more just and equitable laws for the assessment and collection of revenue for State and county and municipal purposes, and to repeal all laws in conflict with the provisions of this act whereby revenue is collected from the assessment on real estate, personal property, privileges and polls."

A portion of section 41 of said act is in these words:

"Sec. 41. That taxes on property for municipal purposes shall be imposed on the value thereof as the same is ascertained by the assessment for state taxation, and shall be collected by the same officers at the time and in the manner prescribed for the collection of State revenue, except as herein provided," etc.

The exception afterwards pointed out is in these words:

"Sec. 42. That all taxes, State, county and municipal to be collected under this act shall be payable the first Monday in October of each year, except municipal taxes

of cities having a population of one hundred thousand or over by the federal census of 1900, or by any subsequent census, and such other municipal corporations which under existing laws are authorized to collect their own taxes on property, privileges and polls."

It is said that the exception above referred to relates solely and exclusively to the time only for the collection of the municipal taxes excepted out of the act, and that by the plain provisions of the act all municipal taxes are to be collected on the basis of the State and county assessment, and that said chapter 258 by implication repeals chapter 366, at least as far as the office of assessor is concerned. In other words, chapter 366, in so far as it undertakes to create the office of city tax assessor, is repealed by the subsequent act, chapter 258.

It is insisted that the proper construction of said section is that the valuation to be placed upon the property of the taxing district, as a basis for levying and collecting municipal taxes, is to be the same in every respect as that fixed by the county assessor for State and county purposes. It is therefore insisted that the bill should have been sustained by the chancellor to the extent it sought to restrain the assessor from placing higher and different values upon complainant's property than it was assessed by the State and county assessor.

These, briefly stated are the contentions made by counsel for appellants in respect of the unconstitutionality of the act of 1903.

It is said in the brief that the chancellor sustained

the constitutionality of the act in question by treating all that is said in the caption about amending the acts of 1893, 1895, 1899, and 1901 as surplusage, and giving effect to the first paragraph of the caption, viz.: "An act to be entitled an act to amend an act to establish taxing districts in this State and provide the means of local government for the same, being chapter 11, Acts of 1879."

The act of 1879 was designed by the legislature as a charter for the extinct municipality of Memphis, which was thereafter to be known as the "Taxing District of Shelby County." It provided an elaborate system of municipal government for the territory and community formerly comprised in the city of Memphis. That charter has been amended from time to time, and as amended is still the constitution of that city. It is true the original act of 1879 was passed in the form of a general law applying to taxing districts of a certain population, but by an act passed March 30, 1891, the name of the corporation was changed back to the city of Memphis. In 1893 an act was passed changing the names of the officers, and providing for their election by the people. By a later act, passed in 1893, power was granted to the corporate authorities to levy municipal taxes, which under the original act of 1879 were directly levied by the general assembly.

Again, by chapter 84, Acts 1893, the rate of taxation was limited. In 1895 the total gross tax levy was limited to $600,000. In 1899 an act was passed further

11 › Tenn—3

limiting the total gross tax levy for every purpose. All these acts were amendments to the original charter act passed in 1879. Three of these amendments, namely, the acts of 1893, 1895, and 1899, are sought to be amended by the act of 1903, chapter 366, now in judgment.

What, in legal contemplation, was the effect of the amendments upon the original act or charter of 1879? Says Mr. Black, in his work on the Interpretation of Laws (section 13), viz.:

"When an amendment to a statute is adopted, there are not two separate enactments, the old and the new, but by their union there is produced one law, namely, the statute as amended."

Again, the same author says (section 131), viz.:

"An amendment of a statute by a subsequent act operates precisely as if the subject-matter of the amendment had been incorporated in the prior act at the time of its adoption, so far as regards any action had after the amendment is made. For it must be remembered that an amendment becomes a part of the original act, whether it be a change of a word, a figure, line, or entire section, or a recasting of the whole language."

It being true, then, as a legal proposition, that the amendments to the charter of 1879 became incorporated therein as though contained in the original enactment, it follows that when these amendments were sought to be amended it was not necessary to refer to them, but to the original act, of which they had become a part.

Goodbar v. Memphis.

The first paragraph of the caption of chapter 366, Acts 1903, is, viz.: "An act to be entitled an act to amend an act to establish taxing districts in this State and to provide the means of local government for same, being chapter 11 of the Acts of 1879." Then follows a more specific description of the character of the amendments proposed. But all that was necessary was to set out the title of the act of 1879, sought to be amended, provided the subject-matter of the amendments was germane to the original act.

In *Hyman* v. *State,* 87 Tenn., 109, 9 S. W., 372, 1 L. R. A., 497, the title to the amendatory act in no way indicated the character of the amendment beyond a correct recital of the title of the act amended. The court said:

"It is not, however, important that the title of an amendatory act shall do more than recite the title or substance of the act amended, provided the amendment is germane to the subject of the original act, and is embraced within the title of such amended act. In other words, if the title of the original act is sufficient to embrace the matter covered by the amendment, it is unnecessary that the title of the amendatory act should of itself be sufficient."

In *State* v. *Algood,* 87 Tenn., 163, 10 S. W., 310, it was said:

"The caption of an amendatory statute need not indicate the particular character of the proposed amendment, provided the title of the original act is therein set

out, and the purview of the amendatory statue is germane to and embraced within the title thus recited."

It has already been seen that the amendatory act of 1903 sets out in its caption the title in full of the original act of 1879, and under the rule announced in the cases just cited the only question to be determined is whether the subject-matter of the amendments is germane to the original act. The subjects embraced in the body of the amendatory act relate to the following subjects, viz.:

(1) To authorize charges for certain public utilities.

(2) To fix the succession of the offices of mayor and vice mayor.

(3) To abolish the office of chairman of the board of public works.

(4) To permit the board of fire and police commissioners to make certain contracts.

(5) To empower the board to fix and to regulate the scale of certain salaries.

The second class of amendments are proposed to the acts of 1893, 1895, and 1899.

"Prohibiting the city of Memphis from levying more than six hundred thousand dollars ($600,000) of taxes for any one year within the original territory of such city."

The amendments proposed to these three acts are:

(1) "So as to provide that the gross levy for general purposes shall not exceed one million one hundred thou-

sand dollars ($1,100,000) for the entire city of Memphis and to apportion the same."

(2)    "And to establish the office of tax assessor and his assistant for such taxing district, and to fix the duties of the same, and to fix their compensation and bond and to provide a board of equalization to revise assessments made by such assessor."

The third class of amendments is proposed to the act of 1879 and to the act of 1901.

The amendment proposed to these acts is to provide for the election of the city attorney, instead of his appointment.

It is difficult to understand why all these subjects embraced in the amendatory act of 1903 are not germane to the original charter act of 1879.    They relate to the assessment and collection of municipal taxes, to the regulation of public utilities, to the creation and abolishment of certain offices, and to the fixing a scale of salaries.    All of these matters are within the purview of a municipal charter.    Hence all that follows the first paragraph in the caption of the act of 1903 was superfluous.

It is said, however, that the title of the act of 1903 is distinctively limited and restricted, and that the courts have no right to amend the caption, and to disregard as surplusage material provisions thereof.    The case of *State* v. *Bradt,* 103 Tenn., 591, 53 S. W., 944, is cited for the proposition that a statute attacked for unconstitutionality cannot be sustained because a title could have been framed in such language as to express one

general subject embracing and warranting all the legislation found in the body of the act.

But the act of 1903 in its title does express one general subject, to which everything in the body thereof is germane, and in this respect is different from *State* v. *Bradt,* supra. The fact that superfluous matter is introduced in the title cannot affect it if otherwise valid.

We are not to be understood as holding that amendments may not be made to amendatory acts without reciting the title or substance of the original act, but our holding is that unnecessary recitals in a title do not invalidate an act. Lastly, it is said that chapter 366, Acts 1903, was repealed by chapter 258, Acts 1903, the latter act being passed a few days later by the same general assembly. It clearly appears, however that no such effect was intended by the legislature. The general rule is that laws having special and local application ` are never deemed to be repealed by general legislation, except upon the most unequivocal manifestations of an intent to that effect. Cooley's Constitutional Law (6th Ed.), 182, 183.

As already seen, chapter 366, Acts 1903, related to the local government of Memphis, while chapter 258, Acts 1903, is a general law to provide for the assessment and collection of State, county, and municipal taxes.

Section 41, chapter 258, page 677, Acts 1903, having reference to the collection of taxes for municipal pur-

poses by the county trustee, makes an exception by saying "except as herein provided."

Section 42, page 678, in providing for the collection of delinquent taxes, says: "Provided that municipal corporations having the power under their charter to collect their own taxes can provide by ordinance for the collection of their delinquent taxes," but then excludes corporations having populations of 14,000 and not over 20,000.

And further down in the same section it is added: "Provided nothing in this section shall apply to municipal corporations which have a right under the provisions of their charters to assess and collect their own taxes on property, privileges and polls."

The act also recognizes that municipal taxes may be collected separately by a municipal collector in regulating the redemption of property sold for taxes.

It is obvious there is no conflict in the two acts, since chapter 366 applied expressly to the assessment and collection of taxes for the city of Memphis, while chapter 258 applies to State and county taxes and to taxes levied in certain municipal corporations which are expressly described.

Affirm the decree.