Van Dyke v. Thompson.

T. N. VAN DYKE *et al. v.* T. C. THOMPSON *et al.*

(*Knoxville.* September Term, 1916.)

1. **STATUTES. Title of repealing act. Constitution.**

The failure of Act Jan. 30, 1911 (Priv. Laws 1911, chapter 10), entitled "An act to amend the charter of the city of Chattanooga and all acts amendatory thereof," to give notice in its caption of the implied repeal of all acts in conflict, worked by section 28, did not render it obnoxious to Constitution article 2, section 17, providing that all acts repealing former laws shall recite in their caption, or otherwise, the title or substance of the law repealed. (*Post, pp.* 141-145.)

Acts cited and construed: Acts 1911, ch. 10.

Cases cited and approved: Luehrman v. Taxing District, 70 Tenn., 425; Ex Parte Griffin, 88 Tenn., 547; Railroad v. Crider, 91 Tenn., 494; State v. Yardley, 95 Tenn., 553; State v. Wilson, 80 Tenn., 247; Hyman v. State, 87 Tenn., 109; State v. Algood, 87 Tenn., 163; Goodlar v. Memphis, 113 Tenn., 35; State v. Yardley, 95 Tenn., 559.

Constitution cited and construed: Art 2, Sec. 17.

2. **STATUTES. Title of amending act. Constitution.**

The notice required by Constitution article 2, section 17, need not be wholly 'set out in the caption, it being sufficient if the caption and the body of the bill, taken together, give notice of the legislation proposed; and where the title to the act plainly and unmistakably expresses the subject and purpose of the legislation proposed, it is not necessary that the details of the act, the purpose of which is to repeal, revive, or amend former laws, shall be set out in the caption, it being sufficient if the caption state the subject, purpose, or object of the legislation so that the legislative intent may be gathered from the words used. (*Post, pp.* 141-145.)

Van Dyke v. Thompson.

3. **STATUTES. Title of amending act. Constitution.**

Act Jan. 30, 1911, House Bill 43, entitled "An act to amend the charter of the city of Chattanooga and all acts amendatory thereof," is not violative of Constitution article 2, section 17; as the caption gave full notice of the act's purpose to amend the original charter act and all acts amendatory thereof. (*Post, pp.* 141-145.)

4. **STATUTES. Title of amending act. Constitution.**

It was not necessary for such act to recite the title or the substance of the acts passed from time to time creating a form of government for the city, in order to avoid violating Constitution article 2, section 17. (*Post, p.* 145.)

Case cited and approved: Goodbar v. Memphis, 113 Tenn., 35.

5. **STATUTES. Amending act. Constitution. Amendment by implication.**

Said act is not violative of Constitution, article 2, section 17, as amending, adding to, and changing the powers and duties of the election commissioners created by general law (Acts 1897, chapter 16), without referring in the caption or the body of the act, to the amended act; any amendment of Acts 1897 being by implication, which does not affect the constitutionality of the statute. (*Post, pp.* 145-147.)

Acts cited and construed: Acts 1897, ch. 16; Acts 1901, ch. 432.

6. **STATUTES. Title of statute. Constitution.**

Said act is not violative of the clause of Constitution article 2, section 17, providing that no bill shall become a law embracing more than one subject, which must be expressed in the title; the sole purpose of the act being to amend the governmental machinery of an existing municipal corporation. (*Post, pp.* 147-150.)

Cases cited and approved: Malone v. Williams, 118 Tenn., 434; Goodbar v. Memphis, 113 Tenn., 35.

Constitution cited and construed: Act. 2, sec. 17; Art 1, sec. 8; Art 11, sec. 8.

7. **CONSTITUTIONAL LAW. Constitutionality of statutes. Examination by supreme court.**

The supreme court, in examining the constitutionality of a statute on appeal, will confine its examination and opinion to such

Van Dyke v. Thompson.

questions only as appellant's rights in the suit entitle them to raise. (*Post, p.* 150.)

Cases cited and approved: Patton v. Chattanooga, 108 Tenn., 221; Richardson v. Young, 122 Tenn., 524.

8. **MUNICIPAL CORPORATIONS.** Officers. Power of legislature. Rights of. Abolishing city offices.

In the exercise of the State's sovereignty over municipalities, the legislature may abolish existing city officers held by incumbents, putting an end to the rights and privileges of the officers, except to receive compensation for services rendered. (*Post, pp.* 150-152.)

Cases cited and approved: Malone v. Williams, 118 Tenn., 462; Halsey v. Gaines, 70 Tenn., 316.

Case cited and distinguished: The Judge's Cases, 102 Tenn., 538.

Constitution cited and construed: Art 1, sec. 8.

9. **STATUTES.** Special legislation. Act amending charter. "Primaries."

Said act is not violative of Constitution, art. 11, section 8, providing that the legislature shall have no power to suspend any general law for the benefit of any individual, etc., as imposing peculiar and onerous burdens upon the citizens of Chattanooga by placing it in a class by itself respecting the use and exercise of the elective franchise and the right to hold office as the portions of the act providing for a primary election to determine who shall be candidates entitled to run for office in municipal elections are matters merely incidental to the selection of officers for the municipality; "primaries" not being in reality elections, but merely nominating devices, within the power of the legislature to regulate by law. (*Post, pp.* 152, 153.)

Case cited and approved: Ledgewood v. Pitts, 122 Tenn., 594.

10. **CONSTITUTIONAL LAW.** Law of the land. Act amending city charter.

Said act, though it abolishes city officers, is not violative of Constitution Tennessee, article 1, section 8, or Constitution United States, article 14, section 1, since the legislature may abolish an office when it has ceased to be a necessity to the public, though

Van Dyke v. Thompson.

it may not take from an officer the substance of the office and transfer it to another. (*Post, pp.* 153-156.)

Case cited and approved: Halsey v. Gaines, 70 Tenn., 316.

Case cited and distinguished: Dartmouth College Case, 4 Wheat., 578.

Constitution cited and construed: Art. 1, sec. 8; Art 14, sec. 1.

FROM HAMILTON.

Appeal from Hamilton Circuit Court.—T. M. McCONNELL, Chancellor.

PRITCHARD & SIZER, CHAMBLISS & CHAMBLISS, SPEARS, LYNCH, SPEARS & PHILLIPS, and MURRAY & LATIMORE, for appellants.

ANDERSON & RANKIN, TRIMBLE & MOON, COOKE, SWANEY & HOPE, WHITE & WHITE, SMITH & CARSWELL, WATKINS, THOMPSON & WATKINS, SHEPHERD, FLEMING & SHEPHERD, M. N. WHITAKER, R. B. COOKE, COLEMAN & FRIERSON, A. W. GAINES, THOMAS & THOMAS, BACHMAN & NOLL, FOUST & PAYNE MILLER & MILLER, BROWN, SPURLOCK, & BROWN, GARVIN & CANTRELL, and WHEELER, MARTIN & TRIMBLE, for appellees.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

BUCHANAN, J. This cause originated upon the filing of complainants' bill in the chancery court of Hamilton county.

The complainants allege that they are, respectively, regularly elected and qualified officers of the city of Chattanooga, and citizens and taxpayers thereof, and in their bill predicate their right and title as such officers upon the original charter act of the city, which is chapter 4 of the published private acts of the General Assembly of the years 1869 and 1870, and upon sundry acts amendatory of the original act.

The purpose of complainants' bill is to enjoin defendants from interfering in any way with complainants, and each of them, in the discharge of the respective offices which complainants severally claim, and to enjoin defendants, and each of them, from attempting by any process or steps whatever to take charge of any part of the city government of Chattanooga, and from the exercise of any of the functions or powers, and from administering, or attempting to administer, in any capacity whatever, the affairs of the city, and from putting into effect or operation any of the provisions, and from exercising any of the powers set forth and contained in a certain act of the General Assembly of the state of Tennessee, a copy of which is made Exhibit A to complainants' bill, and which is by the bill alleged to have been passed on the 30th day of January, 1911, as House Bill numbered 43, and entitled, ''An act to amend the charter of the city of Chattanooga and all acts amendatory thereof,'' and the further purpose of complainants' bill is to have a decree declaring said act to be in violation of the Constitution

of the state of Tennessee, and therefore null and void.

The bill avers that the defendants, who are five in number, claim to have been elected, as a board of commissioners, and one of them as mayor, of the city of Chattanooga, under the provisions of the act, and that the defendants intend to qualify as such officers, and to enter upon the discharge of the official duties prescribed in the act, and thereby to interfere with and embarrass complainants in the discharge of their alleged official duties to the irreparable injury of the complainants, and the city, and to the especial and peculiar injury of the complainants, in that they, by such interference, will be deprived of the privileges, honors, powers, and emoluments incident to the offices which they claim to be entitled to enjoy to the end of the respective terms for which they claim respectively to have been elected.

The defendants demurred to the bill, coupling their demurrer with an answer. The chancellor sustained the demurrer as to the whole bill, and therefore dismissed the bill, and the complainants appealed to this court.

The sole question presented is whether the act of 1911 in any respect involving the rights of complainants is in conflict with the Constitution of this State.

The first assignment of error is based upon that part of article 2, section 17, of the Constitution of Tennessee which provides that:

"All acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended."

The caption of the act of 1911 is as follows:

"An act to amend the charter of the city of Chattanooga and all acts amendatory thereof."

And section one of the act is as follows:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that the charter of the city of Chattanooga, . . . and all acts heretofore passed by the general assembly of the State of Tennessee amendatory thereof are hereby amended as hereinafter provided."

Then follows section 2 to section 29 of the act, from a reading of which, in connection with the charter of the city, may be gathered full information of the purpose, scope, and effect of all amendments of the charter made by the act. By section 27 of the act it is provided:

"That all provisions of the present charter of the City of Chattanooga and the acts amendatory thereof not in conflict with this amendatory act are continued in full force and effect."

And by section 28 of the act it is provided:

"That all acts and parts of acts in conflict with this act be, and the same, are hereby, repealed."

By section 29 of the act it is provided:

"That this act take effect from and after its passage, the public welfare requiring it."

The title to the act of 1911 gave notice on the introduction of the bill that the subject of the legislation proposed by the bill was the amendment of the charter of the city of Chattanooga, Tenn., and further the amendment of all acts amendatory of the charter, and the body of the act, read in connection with the charter and all acts amendatory thereof, gave notice of those respects in which the charter and the acts amendatory thereof were proposed to be amended by the act. The notice required by the language of the Constitution in question under this assignment needs not to be wholly set out in the caption; for, if the caption and the body of the bill taken together give notice of the legislation proposed, the requirement of this portion of the Constitution is met; that is to say, under our decisions, where the title to the act plainly and unmistakably expresses the subject and purpose of the legislation proposed by the act, it is not necessary that the details of the act, the purpose of which is to repeal, revive, or amend former laws, shall be set out in the caption of the act. It is entirely sufficient if the caption state the subject or purpose or object of the legislation clearly, and the details or manner of the proposed repeal, revivor, or amendment be set out in the body of the act, so that the legislative intent may be gathered from the words used. *Luehrman* v. *Taxing District*, 2 Lea, 425; *Ex parte Griffin,* 88 Tenn., 547, 13 S. W., 75; *Railroad* v. *Crider,* 91 Tenn., 494, 19 S. W., 618;

*State* v. *Yardley,* 95 Tenn., 553, 32 S. W., 481, 34 L. R. A., 656.

The character of the act of 1911 is wholly amendatory. The subject on which it was designed to operate was the charter of the city of Chattanooga, which consisted at the time of the introduction of the act of 1911, of the original act of incorporation, and all acts amendatory thereof, howsoever numerous the amendatory acts might be. *State* v. *Wilson,* 12 Lea, 247; *Hyman* v. *State,* 87 Tenn., 109, 9 S. W., 372, 1 L. R. A., 497; *State* v. *Algood,* 87 Tenn., 163, 10 S. W., 310; *Goodbar* v. *Memphis,* 113 Tenn., 35, 81 S. W., 1061.

The act of 1911 does not, by its caption, purport to revive or to repeal any former law. It does not in its body revive any former law, nor does it in its body expressly repeal any former law. It does by its section 27 continue in full force and effect all provisions of the then present charter of the city of Chattanooga, and the acts amendatory thereof, which are not in conflict with the provisions of the act of 1911, and by the effect of its provisions and its twenty-eighth section it does manifest a ligislative intent to accomplish a repeal by implication of all acts and parts of acts in conflict with its provisions. Its twenty-eighth section, under our decisions, cannot, however, be held to be an express repeal, and the failure to give notice of this implied repeal in the caption did not render the amending act obnoxious to the requirement of the Constitution now under con-

sideration. *State* v. *Yardley,* 95 Tenn., 559, 32 S. W., 481, 34 L. R. A., 656.

It is insisted on behalf of complainants that the caption to the act of 1911 should have recited the title or the substance of the sundry acts passed from time to time creating a form of government for the city of Chattanooga. This contention is unsound. *Goodbar* v. *Memphis,* 113 Tenn., 35, 81 S. W., 1061, and other authorities already cited in a former part of this opinion.

The first assignment of error is therefore overruled.

The second assignment of error is based on the same words of the Constitution as the first assignment, but under the second assignment it is insisted that the act is invalid because, as claimed, it "amends," adds to, and changes the powers and duties of the election commissioners created by general law" (chapter 16 of the Acts of 1897), without referring, either in the caption or body of the act, to said act thereby amended, and because it amends the Act of 1901 (chapter 432) and acts amendatory thereof, which fix the salary of the judge of the city court and the salary of the city attorney, without reference in the caption or in the body of the act to said acts, and because it amends the general election law above referred to, which specifically provides the terms and conditions upon which any person may become a candidate for office, may have his name printed upon the official ballot, whether State, coun-

136 Tenn.—10.

ty, or municipal, without reference in the caption or body of the act to the act thus amended. As a matter of fact, we fail to find in the act any provision affecting candidacy for a State or county office.

If it be conceded that the act of 1911 does add to the duties of the election commissioners and otherwise amend chapter 16 of Acts 1897, such amendment as is made is not an express amendment, but one by implication only which under our case of the *State* v. *Yardley*, and other authorities already cited, does not affect the constitutionality of the act of 1911 in so far as this portion of the Constitution is concerned. And if it be conceded that the act does amend the Act of 1901 (chapter 432) in reference to the salary of the city judge and city attorney, this does not render the act invalid, because chapter 432 of the Act of 1901 was itself an amendment of the original charter act of the city of Chattanooga, and upon its passage became incorporated therein and a part of the very charter of the city of Chattanooga which the act of 1911 was designed to amend, and, as we have already seen, the caption of the act gave full notice of its purpose to amend the original charter act, and all acts amendatory thereof, and thereby fully met the requirement of the Constitution now in question. Other answers might be made to each part of the second assignment, but we are content with those above given, and the second assignment is overruled.

The third assignment of error is based upon that part of article 2, section 17, of the Constitution which provides that:

"No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

And the insistence is made that while the title of the act of 1911 purports to be an amendment of existing laws, it in fact and in truth repeals the existing law, and substitutes for the existing form of government provided by said law new and independent legislation wholly inconsistent therewith.

We cannot assent to this view. On the contrary, as stated in the discussion of the first assignment, we think the act is what it purports to be, to wit, an amendment, with a caption sufficient in scope to cover the entire range of legislation accomplished by the body of the act. This case is easily distinguishable from *Malone* v. *Williams*, 118 Tenn., 434, 103 S. W., 798, 121 Am. St. Rep., 1002. In the latter case the bill, which was called in its caption an amendment, was in fact a complete scheme of legislation; in effect it was a new charter, and covered the entire subject with which it dealt. It created a municipality, and furnished it with the agencies and instrumentalities of government. It was original and independent legislation in all things except its caption. But the act of 1911 does not create a new charter for the city of Chattanooga. It does not create a municipality. It, on the contrary, amends a charter already in exis-

tence, and provides agencies and instrumentalities for the government of a municipality already created. It amends the governmental machinery of an existing municipal corporation. Its caption declared it to be legislation of this charter, and its provisions accomplished legislation of this character. Its caption expressed one general purpose, and one only, to wit, amendment of the existing charter, and all the acts amendatory thereof, and by its provisions the body of the act accomplished that sole purpose and none other. If, in order to accomplish that purpose, the act repealed by implication existing laws, and substituted for the then existing agencies and instrumentalities of government other and different agencies and instrumentalities looking to the improvement of the government of the city, this was a matter wholly within the discretion of the legislature, and was but an accomplishment of the sole and single purpose claimed for the act by its caption.

Nothing is accomplished by the act of 1911 which would have been outside of the scope of the title of the original charter, and therefore, under our authorities, so far as the part of the Constitution now in question is concerned, all that was done by the act of 1911 was germane to, and within the scope of, its own title. *Goodbar v. Memphis*, 113 Tenn., 35, 81 S. W., 1061, and authorities there cited.

Reverting to the contention indicated in the assignment that the repeal of existing statutes by the act, which statutes were inconsistent with its pro-

visions, so operated as to make the legislation ac-complished by the act double, and therefore too broad for its caption, it should be noted that the only existing laws repealed by the act were repealed by implication, because they could not coexist with the act of 1911, and their repeal was but a part of the amendment covered and proposed by its caption.

It follows from these views that the third assign-ment of error is not well taken, and is therefore overruled.

The fourth assignment of error invokes article 1, section 8, of the State Constitution, which is as fol-lows:

"That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

And the fourth assignment of error also invokes article 11, section 8, of the State Constitution, which, in so far as here invoked, is as follows:

"The legislature shall have no power to suspend any general law for the benefit of any particular in-dividual nor to pass any law for the benefit of in-dividuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunites or ex-emptions other than such as may be, by the same law extended to any member of the community, who may

be able to bring himself within the provisions of such law. . . ."

It should be noted that this court will confine its examination and opinion to such questions only as complainants' rights in this suit entitle them to raise. *Patton* v. *Chattanooga*, 108 Tenn., 221, 65 S. W., 414; *Richardson* v. *Young*, 122 Tenn., 524, 125 S. W., 664; *Hunter* v. *Crump,* Memorandum Opinion, Jackson.

The only question complainants are entitled to raise is whether or no the act deprives them of the privileges of holding an office, or deprives them of a property right in an office, and the answer to this question is that, in the exercise of the State's sovereignty over municipalities, its legislatve department had the right to destroy and abolish the offices which complainants held, and this, if done by an act in all other respects constitutional, put an end to the rights and privileges of complainants in the respective offices theretofore held by them, except, of course, their rights to receive compensation for services rendered by them up to the time of the abolition of their respective offices, but no claim of this kind is made by them in this suit.

To state the proposition in another way, article 1, section 8, of the Constitution is no barrier to the power of the legislative department of this State by an act in all other respects constitutional to abolish an office. *Malone* v. *Williams,* 118 Tenn., 462, 103 S. W., 798, 121 Am. St. Rep., 1002.

Van Dyke v. Thompson.

In the case last named it was held that the abolition of the office abrogated the duties attached, and that, as an incident thereto, the rights of the official ceased, because there was nothing to which his rights could attach.

It has been held in this State that, although the Constitution of the State fixes the term of office of a judge of a circuit or chancery court as a period of eight years, yet the legislature has the power and the constitutional right, in the interest of the public, by legislative enactment to abolish and destroy the circuit or chancery division over which such judge presides, whenever such circuit or division, in the judgment of the legislature, becomes unnecessary, and that in such a case the office does not exist after the passage of the act, and that, if the office be thus abolished before the expiration of the judge's term, he is without remedy, and also without office, and without right to compensation for the remainder of his term. *Halsey* v. *Gaines,* 2 Lea, 316.

In another case, after reaffirming the existence of this power in the legislative department of the State, this court said:

"The power may possibly be exercised without good cause, but in such case the court can furnish no remedy."

And in another part of the same opinion it is said:

"If the law abolishing the courts is valid, the offices and their incumbents necessarily cease, and,

of course, along with them   their   salaries.''   *The Judges' Cases,* 102 Tenn., 538, 53 S. W., 141.

A text-writer states the principle thus:

''When the State employs officers or creates municipal corporations as the mere agencies of government, it must have the power to   discontinue   the agency whenever it comes to be regarded as no longer important. The framers of the Constitution did not intend to restrain the States in the regulation of their civil institutions adopted for internal government.   They may therefore discontinue offices or change the salaries or other compensation or abolish or change the organization of municipal corporations at any time, according to the existing legislative view of the State policy, unless forbidden by their own Constitution from doing so.''   Cooley's Constitutional Limitations (7th Ed.), 388.

It follows from the foregoing that, in so far as the fourth assignment is based on article 1, section 8, of the State Constitution, it is not well taken, and is overruled.   In what has been said we are not to be understood as in any way impeaching the well-known limitation on the power of the legislature to the effect that it cannot abolish a constitutional office.

We will now consider the fourth assignment in so far as it is based on article 11, section 8, of the State Constitution.   By this part of the assignment numbered 4 complainants insist that the act imposes peculiar and onerous burdens upon the citizens of Chattanooga by placing it in a class to itself respecting

the use and exercise of the elective franchise and the right to hold office, which are rights and privileges of a general nature common to all citizens of the State.

The act in question does not attempt to deal with or make provision for any· except municipal offices, and those portions of the act under consideration which provide for a primary election in order to determine who shall be candidates entitled to run for office in municipal elections in the city of Chattanooga are matters merely incidental to the selection of officers for the municipality. Such primaries are not in reality elections, but merely nominating devices, and in the interest of good government, and within the power of the legislature to regulate by law. *Ledgerwood* v. *Pitts,* 122 Tenn., 594, 595, 125 S. W., 1036. By no section or part of the act assailed in the case at bar have we been able to perceive any suspension of the general law of the State.

The fifth assignment of error is based on article 1, section 8, of the State Constitution, and also on article 14, section 1, of the Constitution of the United States. This assignment assumes that complainants have been legislated out of office, in which they had a constitutionally secured property right. As heretofore stated, it was settled in *Halsey* v. *Gaines,* 2 Lea, 316, that it was within the power of the legislature to abolish a court and *ipso facto* destroy the office of the judge of the court, although under the Constitution the term of the judge was fixed at eight

years, and had not expired when his, court was abolished.

While it is true that in *Malone* v. *Williams,* supra, this court said:

"Nor can the legislature take from the officer the substance of the office, and transfer it to another, to be appointed in a different manner, and to hold by a different tenure, although the name of the office is changed, or the office divided, and the duties assigned to two or more officers under different names."
—yet it is to be noted that the act under consideration in *Malone* v. *Williams,* while purporting by its caption to be an amendment, was, in fact, by this court held to be an original act, designed to accomplish, and which by its provisions did accomplish, the identical result which is condemned by the quotaton above; but a well-recognized distinction exists between such legislation as was condemned by this court in *Malone* v. *Williams* and other legislation where the legislative purpose, as disclosed by the act, is to abolish an office because it is not necessary to the public good that the office should continue to exist, or where the office forms a part of a scheme of government for a municipality, and is abolished to the end that a better scheme of government may be conferred.

In its last analysis under our Constitution and laws, the power of the legislature in respect of these matters rests upon public necessity. There is no public necessity that the legislature shall have the

power to take from an officer the substance of the office and transfer it to another, and therefore the legislative power to do this does not exist, and the attempted exercise of such power is in violation of the right of the incumbent of the office with which it attemps so to deal, as was held in *Malone* v. *Williams;* but there is a public necessity that the legislature shall have power to abolish an office when it has ceased to be a necessity to the public, or when it forms a part of a scheme of municipal government, and its abolition is necessary, or so deemed by the legislature, in order that a better form of municipal government may be conferred; and here, or in this class of cases, because and by reason of the public necessity that this power should exist in the legislature, the incumbent of the office holds it subject to the legislative power, and the right to abolish whensoever that power and right may be exercised by legislative enactment not otherwise in conflict with the Constitution.

As said by Mr. Cooley in his work on Constitutional Limitations (7th Ed), p. 388:

"They may therefore discontinue offices or change the salary or other compensation or abolish or change the organization of municipal corporations at any time, according to the legislative view of State policy, unless forbidden by their own Constitutions from doing so."

"The selection of officers, who are nothing more than public agents for the effectuating of public purposes is matter of public convenience or necessity, and so, too, are the periods for the appointment of

such agents, but neither the one or the other of these arrangements can constitute any obligation to continue such agents, or to reappoint them after the measures which brought them into being shall have been found unless, shall have been fulfilled, or shall have been abrogated as even detrimental of the well-being of the public." *Butler* v. *Penn.*, 10 How., 402, 13 L. Ed., 472.

In the *Dartmouth College Case,* 4 Wheat., 578, 4 L. Ed., 629, it was said:

"That the framers of the Constitution did not intend to restrain the States in the regulation of their civil institutions adopted for internal government."

Mr. Cooley, in his work on Constitutional Limitations (7th Ed), p. 388, quotes as above from the opinion of Chief Justice Marshall, and cites a long list of authorities sustaining the text.

The act of 1901 is the law of the land within the meaning of article 14, section 1, of the Constitution of the United States. There is no merit in the fifth assignment, and it is overruled.

There is no merit in the sixth and last assignment of error, which complains because the chancellor held that the act in question was in all respects constitutional, and denied to complainants the relief prayed for.

As a matter of fact, the chancellor decreed that the act was not in any respect involving the rights of complainants in conflict with the Constitution.

We see no error in the conclusion reached by the chancellor or in his decree, and therefore the same will be affirmed.